UNITED STATES v. JOSEPH FLEMING & SON CO. et al.

(District Court, W. D. Pennsylvania. January, 1918.)

No. 90.

1. CRIMINAL LAW ☞972—ARREST OF JUDGMENT.

The count legally charging an offense, and the evidence not being a part of the record, the judgment cannot legally be arrested.

2. POISONS ☞4—ACQUISITION BY DEALER—"LAWFUL BUSINESS"—STATUTES.

Under Harrison Anti-Narcotic Law, § 2 (Comp. St. 1916, §.6287h), declaring the offense of selling certain drugs, except under certain conditions, and the offense of obtaining them by a dealer for any purpose other than sale "in the conduct of a lawful business" therein, his business, under exception (b), is lawful if he sells only on proper prescription, however much is prescribed; there being no limitation therein or in exception (a) as to amount physician may prescribe.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lawful Business.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. POISONS** ⟨=⟩4—LAWFUL BUSINESS—STATUTES AND RULES.

    Harrison Anti-Narcotic Law, § 1 (Comp. St. 1916, § 6287g), authorizing designated government officers to make rules and regulations for carrying the provisions of the act into effect, does not empower them to make unlawful a druggist's business in the drugs, if under section 2 (Comp. St. 1916, § 6287h) it is not so.

**4. POISONS** ⟨=⟩9—LAWFUL BUSINESS—STATUTES—EVIDENCE.

    What is a lawful business in the sale of narcotics being defined by Harrison Anti-Narcotic Law, § 2 (Comp. St. 1916, § 6287h), it is error, on prosecution for violation thereof, to admit evidence of what constitutes a lawful business therein, varying from the statutory definition.

Joseph Fleming & Son Company and others were convicted of violation of the Harrison Anti-Narcotic Law, and move for new trial and in arrest of judgment. New trial granted.

John M. Henry, Asst. U. S. Atty., and John Dunkle, both of Pittsburgh, Pa., for the United States.

R. P. Marshall and Joseph Stadtfeld, both of Pittsburgh, Pa., for defendants.

THOMSON, District Judge. We have for consideration a motion by defendants for a new trial, and also a motion in arrest of judgment. The indictment, charging certain violations of the Harrison Anti-Narcotic Act (Act Dec. 17, 1914, c. 1, 38 Stat. 785 [Comp. St. 1916, §§ 6287g–6287q]), contains 16 counts. The first count is drawn under the latter portion of section 2 of the act, and charges that narcotic drugs were obtained for an unlawful purpose. Counts 2 to 15, both inclusive, charge the defendants with the unlawful sale of drugs to the parties named in the several counts, not in pursuance of a written order from the purchaser, in violation of section 2. John C. Larkin was acquitted generally. The corporation, Arnold A. Staley, and John Staley were convicted on the first count and acquitted on all the remaining counts.

This leaves the case in an anomalous situation. The government contended that the defendants, by filling prescriptions for large amounts of morphine sulphate, often as much as 16 drams in one prescription, were guilty of making illegal sales under section 2 of the Harrison Act, and were thus conducting an unlawful business in such drugs. The testimony as to the amount thus sold in two years was certainly astounding. But in all those counts charging unlawful sales the defendants were found not guilty by the jury. Now, the difficulty of the case arises here. The first count, upon which a conviction was had, charges the defendants with *obtaining* such drugs by means of order forms for purposes other than the use, sale, and distribution thereof in the conduct of a lawful business in such drugs. There was not the slightest evidence that the drugs in question were procured for any purpose except the sale thereof in the conduct of their business as dealers in drugs. But the government contended that the sale of large quantities of drugs on prescription was unlawful, and that the purchase and keeping on hand of a large stock of narcotics to supply these unlawful sales was itself unlawful; in other words, in the lan-

guage of the act, that such drugs were obtained for purposes other than the use, sale, and distribution thereof in the conduct of a lawful business in such drugs. This conclusion would have been justified, and would almost necessarily have followed, if the jury had found the sales as made by the defendants to have been illegal; but it has no foundation on which to rest in the face of their finding that the sales as made were legal; in other words, that they were conducting a lawful business in the sale of such drugs.

[1] However unfavorably the court may regard the business of the defendants as they conducted it, and having in mind the public welfare it was certainly censurable, it is still the court's bounden duty in the administration of the criminal law to see that verdicts involving the liberty of citizens have a sure foundation on which to rest. Such foundation I do not find to support the jury's verdict under the first count of the indictment. But as this count legally charges an offense, and the evidence is not a part of the record, the judgment cannot be legally arrested.

[2] But there is a more serious question as to the true interpretation of the second exception to section 2, relating to the sale of narcotics by druggists. It is undoubtedly true that Congress contemplated and intended that such drugs should be sold and dispensed for medicinal purposes only. Throughout the act they are spoken of as drugs, and the only legitimate use of drugs is medicinal. This is in harmony with the act of 1909 (Act Feb. 9, 1909, c. 100, 35 Stat. 614 [Comp. St. 1916, §§ 8800, 8801]), whereby the importation or use of opium, except for medicinal purposes, is prohibited. It is necessary to examine critically what limitations Congress has actually imposed on the sale or distribution of narcotics under the Harrison Act. This matter is dealt with in section 2 alone. This section makes it unlawful for any person to sell, barter, exchange, or give away any of such drugs, except in pursuance of a written order from the purchaser on a form issued by the Commissioner of Internal Revenue, with a provision for preserving such orders for the period of two years. I have used the word "purchaser," as we are here concerned only with sales. It will be observed that in this enactment Congress set no limitation on the amount of drugs which could thus be sold on the written order of the purchaser. The limitation near the end of the section, to be considered later, relates to the *acquisition* and not to the *sale* of narcotic drugs. This general enactment made all sales by all persons unlawful, except on written orders of the purchaser. Then follow certain exceptions. The first two, which are material here, are in these words:

"Nothing in this section shall apply—

"(a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under this act, in the course of his professional practice only," with a proviso that the physician, etc., shall keep a record of the drugs dispensed, showing the amount, the date, and name and address of the patient; the record to be kept for a period of two years.

"(b) To the sale, dispensing, or distribution of any of the aforesaid drugs by a dealer to a consumer and in pursuance of a written prescription issued by a physician, dentist or veterinary surgeon registered under this act: Provided, however, that such prescription shall be dated as of the day on which

signed and shall be signed by the physician, dentist or veterinary surgeon who shall have issued the same: And provided further, that such dealer shall preserve such prescription for a period of two years from the day on which such prescription is filled in such a way as to be readily accessible to inspection by the officers, agents, employés, and officials hereinbefore mentioned."

Examining the first exception, it is perfectly apparent that the physician, in order to bring himself within the exception, must comply with the conditions attached thereto, namely: First, he must be registered under the act; second, he can dispense such drugs only to a patient in the course of his professional practice; third, he must make and keep a record of the drugs dispensed as therein provided, and preserve the same for two years. If the physician fails to observe any of these conditions attached to the exception, he takes himself out of the exception and becomes liable under the general provisions of section 2, making all sales, except on an order from the purchaser, unlawful. Failure to observe the clear distinction between the violation of the general enactment and the violation of the conditions annexed to the exception has led to great confusion in the drawing of indictments and in judicial decisions in the various federal jurisdictions.

Turning to exception (b), we find also certain conditions attached thereto, namely, the provisions of section 2 shall not apply to the sale, dispensing, or distribution of the drugs by a dealer to a consumer, if made (1) under and in pursuance of a written prescription issued by a physician registered under the act; (2) provided such prescription shall be dated as of the day on which signed, and shall be signed by the physician issuing the same; (3) such prescription shall be preserved for two years, for the purpose of official inspection.

These are the sole conditions which Congress has prescribed as governing the sale and distribution of narcotics by the registered dealers. It appears Congress undertook to regulate the amount of such sales by putting the limitations on the physician who prescribes the drug, and not on the druggist who fills it. The former is supposed to know the needs of his patient and to prescribe accordingly. And if he distributes the drugs to others than his patients, or in amounts not warranted in the legitimate practice of his profession, for the purpose of alleviating suffering or effecting a cure, he is not protected by the exception, and becomes criminally liable for the violations of the general provisions of section 2. Wisely or unwisely, Congress appears to have placed no other limitation whatever on the amount of the sale. It made the prescription of the registered physician the sole and sufficient warrant for the sale by the druggist of the drugs therein prescribed. Evidently it was intended that, if the druggist keeps within the limitations of the prescription, he is protected thereby. In an act prescribing severe penalties for its violation, courts dare not become wiser than the lawmakers and attempt to read into the act something which the lawmakers have omitted. If a physician issues prescriptions in bad faith, and a druggist acts in collusion with him to violate the law, they may well be guilty of conspiracy; but that is not the charge in this indictment.

The provision near the end of section 2 makes it unlawful to obtain by means of order forms any of said drugs for any purpose other

than the use, sale, or distribution thereof (if a dealer) in the conduct of a lawful business in said drugs, or (if a physician) in the legitimate practice of his profession. A careful scrutiny of the act makes it reasonably apparent that the meaning of the words "in the legitimate practice of his profession" and "in the conduct of a lawful business in said drugs" are defined and fixed by the limitations on the action of physicians and druggists prescribed in exceptions (a) and (b). In other words, if the physician prescribes the drugs to patients in the course of his professional practice only, this constitutes the use, sale, or distribution of such drugs in the legitimate practice of his profession; and if the dealer sells or dispenses the drugs only in pursuance of a written prescription, issued by a registered physician and dated as of the day it is signed, then such drugs are distributed by him in the conduct of a lawful business in such drugs. These provisions, embraced in the same section, one relating to the acquisition of the drugs and the other to their sale and distribution, when thus read, are in complete harmony.

[3] While under the first section of the act the Commissioner of Internal Revenue is authorized, with the approval of the Secretary of the Treasury, to make all needful rules and regulations for carrying the provisions of the act into effect, I find no rule or regulation affecting the interpretation which I have put upon the exceptions to section 2. Treasury Department Regulation No. 2172, relating to fraudulent or forged prescriptions, has no application to the question in hand. Treasury Department Circular No. 220 provides as follows:

"Where a physician, dentist or veterinarian prescribes any of the aforesaid drugs in a quantity more than is apparently necessary to meet the immediate needs of a patient in the ordinary case, or where it is for the treatment of an addict or habitué to effect a cure, or for a patient suffering from an incurable or chronic disease, such physician, dentist or veterinary surgeon should indicate on the prescription the purpose for which the unusual quantity of the drug so prescribed is to be used. In cases of treatment of addicts these prescriptions should show the good faith of the physician in the legitimate practice of his profession by a decreasing dosage or reduction of the quantity prescribed from time to time; while, on the other hand, in cases of chronic or incurable diseases such prescriptions might show an ascending dosage or increased quantity. Registered dealers filling such prescriptions should assure themselves that the drugs are prescribed in good faith for the purpose indicated thereon, and, if there is reason to suspect that the prescriptions are written for the purpose of evading the intentions of the law, such dealers should refuse to fill same."

This instruction is in line with the general purpose of the act, and is properly and wisely intended to aid in restricting as far as possible the distribution of narcotics to medicinal purposes only. But the designated officers of the government have not been given, and do not possess, the power to place limitations on an act differing from, and inconsistent with, those which Congress has definitely prescribed. There was no question of fact as to the exact manner in which the defendants dispensed the drugs, and it is clear under the evidence that they at least complied with the letter of the law. But in my charge to the jury, among other things, I said:

"Therefore, if a druggist knows, or has reason to believe, that the prescription which he is asked to fill has not been issued by the physician to a pa-

tient in the course of his professional practice, and in the legitimate practice of his profession, then it is his duty to refuse to fill it; and, if he does not so refuse, he violates the law."

[4] I also admitted evidence bearing on the question as to what constitutes a lawful business in the sale and distribution of narcotic drugs. In this I think I was in error. In United States v. Reese, 92 U. S. 214, 23 L. Ed. 563, the court said:

"If the Legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime."

If I am right in my construction of the law, Congress has defined what is a lawful business in the sale of narcotics by a dealer; and it is not a question of good faith on his part, but of strict compliance with the conditions, which Congress has imposed upon him.

From the foregoing considerations, it follows that a new trial must be granted; and it is so ordered.