## ECKERT v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.
August 6, 1925.)

No. 6615.

**1. Poisons ⬅️4—Druggist filling excessive number of prescriptions for narcotics held not to have violated Harrison Act, though sales were made to known addicts.**

Druggist, selling narcotics only on prescriptions of registered physician, cannot be held guilty of violation of Harrison Anti-Narcotic Act as amended (Comp. St. Ann. Supp. 1919, § 6287g et seq.), though number of prescriptions filled and aggregate amount of drugs sold within a given period is excessive and unreasonable, and though such sales were made to persons known, in part at least, to be addicts, in absence of any charge of conspiracy between physician and druggist, since such construction of act would be violative of both Fifth and Sixth Amendments to Constitution.

**2. Criminal law ⬅️1169(11)—Conviction for unlawful sale of narcotic held not sustainable, in view of evidence erroneously admitted in support of other counts of indictment.**

Conviction of druggist on count of indictment charging sale of narcotic without prescription *held* not sustainable, in view of evidence erroneously admitted in support of other counts of indictment under which defendant was tried, on theory that he was guilty of unlawful sales merely because number of prescriptions filled was excessive.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Charles V. Eckert was convicted of violations of the Harrison Anti-Narcotic Act, and he brings error. Reversed.

Verne Lacy, of St. Louis, Mo., for plaintiff in error.

Before SANBORN, LEWIS, and BOOTH, Circuit Judges.

LEWIS, Circuit Judge. **[1]** Plaintiff in error was convicted on five counts of an indictment which charged him with sales of narcotic drugs in alleged violation of the Harrison Anti-Narcotic Act as amended (U. S. Comp. St. Ann. Supp. 1919, § 6287g et seq.). The sales were made in St. Louis on different days to different persons in 1920, two in January, two in May, and one in September. Four of the counts are in the same form. Each charges that Charles V. Eckert, on the day named, made a sale to the person named, in the manner following:

That Thomas S. Manning, a physician duly registered with the Collector of Internal Revenue as a dealer in and dispenser of the drug, issued a prescription to the person to

7 F.(2d)—17

whom the sale was made calling for the drug in the amount named, but that said prescription was not given by Dr. Manning in the course of his professional practice only for the treatment of any disease from which the party to whom it was given was then suffering but at the time he issued said prescription, as he well knew, the party to whom it was given was an addict to the use of the drug and the prescription was issued only for the purpose of gratifying the appetite of the addict and in order that the use might be so continued; that Eckert was a druggist at St. Louis and had registered with the Collector as a dealer in the drugs sold; that at the time of the presentation to him of the prescription by the addict he knew that the person presenting the prescription was an addict and that it was not issued by Dr. Manning in the course of his professional practice only in the treatment of a disease from which the addict was suffering, and knew that it was issued only for the purpose of gratifying the appetite of the addict for the drug and in order that he or she might continue the customary use thereof, and that when he filled the prescription and made the sale he used it to cloak an unlawful sale to the addict, in violation of the act.

There is no charge of a conspiracy or understanding of any kind between Dr. Manning and Eckert as to any of these transactions, or of any other sales made by Eckert of like kind, though many other prescriptions of like kind issued by Dr. Manning, and some by other physicians, were filled by Eckert. The record at the trial discloses that complaints were made to Eckert by narcotic agents that he was filling too many prescriptions for narcotic drugs for addicts, especially those issued by Dr. Manning. Eckert stopped for awhile filling Dr. Manning's prescriptions and submitted the complaints of narcotic agents to his counsel. He then took the position that he had a lawful right to fill any and all prescriptions issued by physicians who were registered and authorized to dispense the drug, that it was not his duty to enter upon an investigation as to whether a prescription had or had not been lawfully or properly issued, if it came to him from a registered physician. The prosecution took the broad stand that Eckert had violated the act and was subject to punishment because of the large amount of drugs in the aggregate which he sold on the prescriptions within a given time, and tried the case on that theory. The time covered in computing the amount sold by Eckert was

approximately the first six months of the year 1920, during which prescriptions filled by him totaled 228 ounces of morphine and 75 ounces of cocaine; whereas, it was testified by a narcotic agent that this far exceeded the average sold by a druggist within the city of St. Louis during that time.

The theory on which the government made its case was resisted by the defendant by timely objections to the introduction of such testimony, and exceptions were saved to the rulings thereon. The prescriptions filled by Eckert during the time selected were produced. Eckert had complied with the requirements of the act in keeping these prescriptions on file, and they were obtained from him under the law by the narcotic agents. The court in its instructions to the jury accepted the theory of the prosecution and charged that the proof as to the great number of prescriptions filled by Eckert during the time selected and the total amount of drugs sold by him in filling them was for the purpose of enabling the jury to reach a conclusion on the question of Eckert's good faith, and that, if when he filled them he knew they had not been issued by Dr. Manning in good faith and in the course of the doctor's professional practice only, he nevertheless filled them and gave the drugs called for therein to the parties named, the jury would be warranted in finding the defendant guilty; that if a physician issues a prescription in good faith to cure a patient or to alleviate the suffering of the patient, then the druggist has a right to fill it, but that if a physician issues a prescription not with good intent and not in good faith to effect a cure or to alleviate the suffering of the patient, but for the purposes of gratifying the appetite of that patient, then such a paper cannot be called a prescription, and that if the druggist knew the prescription had been issued in that way he would violate the act in filling it.

There was no evidence whatever that Eckert knew anything about the purpose and intention of the physician who issued the prescriptions which he filled, either those charged in the indictment or the others which were received in evidence. He knew that most, if not all, of those to whom they were issued were addicts. The claim of the prosecution that they were issued in bad faith and not for the purposes permitted by the statute, and that Eckert knew when he filled them that they had been so issued, rests upon the facts that have been stated; that is, the frequency with which Eckert filled the prescriptions and the aggregate amount of drugs which they called for within the time stated.

We think the theory on which the case was tried and submitted to the jury is untenable, because not within the definition of any of the crimes denounced by the act. It does not place on the druggist the burden of inquiry into the intent and purpose of the physician in issuing the prescriptions; to the contrary, it expressly authorizes the druggist to sell on prescriptions issued by registered physicians. Section 2 of the act (Comp. St. § 6287h), after broadly declaring that it shall be unlawful for any person to sell, barter, exchange or give away any of the drugs, excepts and excludes therefrom the dispensing or distribution of any of said drugs by a dealer to a customer under and in pursuance of a written prescription issued by a physician registered under the act. Dr. Manning and the other physicians whose prescriptions Eckert filled were all registered. The blank forms on which the prescriptions were made out are provided for and required under the same section. They are sold by the Commissioner of Internal Revenue to registered physicians to be used by them in prescribing the drug. The law leaves entirely with the physician the responsibility as to when, under what conditions, and for what purposes he will issue a prescription for the drug. Paragraph (b) of section 2 excepts from the crime which it defines a sale or distribution of the drug by a dealer to a consumer under and in pursuance of a written prescription issued by a physician registered under the act; requiring only that the prescription shall be dated as of the day on which it is signed by the physician and that the dealer shall preserve it for a period of two years from the day on which it is filled, so that it may be readily accessible to inspection by narcotic agents. Responsibility for issuance of prescriptions is placed upon the physician, not the druggist; when brought to him to be filled it is his protection. On this subject Judge Thompson, in United States v. Joseph Fleming & Son Co. (D. C.) 251 F. 932, 935, after noting the provisions in subdivision (b) of section 2, says:

"These are the sole conditions which Congress has prescribed as governing the sale and distribution of narcotics by the registered dealers. It appears Congress undertook to regulate the amount of such sales by putting the limitations on the physician who prescribes the drug, and not on the druggist who fills it. * * * Wisely, or un-

wisely, Congress appears to have placed no other limitation whatever on the amount of the sale. It made the prescription of the registered physician the sole and sufficient warrant for the sale by the druggist of the drugs therein prescribed. Evidently it was intended that, if the druggist keeps within the limitations of the prescription, he is protected thereby. In an act prescribing severe penalties for its violation, courts dare not become wiser than the lawmakers and attempt to read into the act something which the lawmakers have omitted. If a physician issues prescriptions in bad faith, and a druggist acts in collusion with him to violate the law, they may well be guilty of conspiracy; but that is not the charge in this indictment."

Moreover, the charges set up in the first four counts, which the prosecution attempted to sustain on the theory stated, are in conflict with the requirements of the Fifth and Sixth Amendments to the Constitution. On a case thus made there would be no standard by which guilt could be determined, nor would a dealer be able to know when he was within or without the law, no means of informing him of the nature and cause of the accusation. One jury might convict on a sale of one hundred ounces during a six months period, another require less or more. As said in United States v. Cohen Grocery Co., 255 U. S. 81, 89, 41 S. Ct. 298, 300 (65 L. Ed. 516, 14 A. L. R. 1045) : "It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against."

It was claimed, and the case was submitted to the jury on that claim, that the bad faith of the physician in issuing the prescriptions was known to the defendant when he filled them; but the record shows that that claim rested entirely on the number of prescriptions filled during the six months' period and the total amount of narcotics which they called for. The amount that may be sold by a registered druggist on prescriptions not having been limited by the act, and there being no standard set up beyond which the druggist might not go in dispensing the drug within a given time, it seems to follow that the verdict of the jury was based upon its conclusion that the defendant was filling too many prescriptions and selling in the aggregate too much narcotic drugs to have been within the law when he made the sales charged against him, because in their judgment he exceeded a reasonable limit.

[2] The last count is not like the other four. It charged Eckert with making a sale to a named person without having the prescription of a physician therefor, and with making a sale on a form issued in blank for that purpose by the Commissioner. As to that, there was conflict in the evidence. The defendant contended that he made the sale on a prescription; the addict that he got the drug without a prescription. There was a prescription, the conflict and respective contentions being whether the sale was made before or after the prescription was delivered to the druggist. Ordinarily, the conclusion of the jury on such testimony would be final; but we are convinced that the line of evidence introduced to support the other charges was not and could not be excluded from the minds of the jury when they came to consider this charge, and that the evidence admitted in support of the other charges was necessarily prejudicial to the defendant when the jury came to consider the evidence which related only to this charge.

The judgments of guilt entered on all the verdicts are therefore reversed.