Maeshadl, C. J.,
dissenting. While I have styled this opinion a dissenting opinion, I wish to state at thé outset that I concur in the judgment rendered by the majority of the court in this case solely upon the ground that there is no evidence shown by the record to support the verdict and judgment.
While for that reason I concur in the judgment of the majority of this court, I dissent from the reasoning in the majority opinion.
In the majority opinion, written by Judge Jones and concurred in by Judges Matthias, Bobinson and Hough, the judgment of affirmance was directly based upon the principles declared in American Woodenware Mfg. Co. v. Schorling, 96 Ohio St., 305, and it was stated in the syllabus that the Schorling case was approved and followed.
Judge Johnson wrote the opinion in the SchorUng case, and that judgment was concurred in by all the members of the court except Judges Donahue and Wanamaker. Judge Johnson has published a dissenting opinion in this case, in which he seeks, to distinguish it from the Schorling case, but fails to convince the majority that there is any distinction in principle.
Judge Wanamaker in a vigorous opinion dissented from the judgment in the Schorling case, and in an equally vigorous opinion dissents from the judgment in the instant case. In his dissenting opinion in the instant ease he declares that the question *22 decided in this case is identical in principle with the question decided in the Schorling case.
On the reargument of this cause, counsel for plaintiff in error employed nine pages of his printed brief in attempting to state what he believed to be the true meaning and the proper application of the principles laid down in the Schorling case. He earnestly argued, both in brief and orally, that the Schorling case, when properly construed, understood and applied, fully sustains the contentions of the plaintiff in error in this cause. Counsel for defendant in error was equally earnest in contending that the Schorling case contains sound doctrine, but that it fully sustains the contentions of the defendant in error. Counsel appearing as friends of the court, representing the Ohio State Federation of Labor, filed a brief arguing that the judgment in this cause should be affirmed upon the authority of the Schor.ling case, and expressed the fear that any different declaration of principles from the declarations contained in the Schorling case would be subversive and destructive of the Workmen’s Compensation Law. Counsel appearing as a friend of the court, on behalf of the. Ohio Manufacturers Association, filed a brief approving the Schorling case and arguing that that case was conclusive of the present controversy and that therefore the judgment should be affirmed. Other counsel having a case pending in the district court of the United States for the northern district of Ohio, and therefore interested in having this-judgment reversed, filed a brief in which it was sought to distinguish the Schorling case and to show that it was not decisive of the present controversy. A brief is also filed by the Cleveland Building *23 Trades Council, and while in it there is no discussion of the Schorlmg case, or any other judicial authority, issue is taken with the wishes expressed by the Ohio Manufacturers Association and Ohio State Federation of Labor, and it is strongly urged by the Cleveland Building Trades Council that Section 12593, General Code, be sustained as a lawful requirement.
The foregoing narration demonstrates not only the seriousness of the state of the law concerning lawful requirements, but it also demonstrates that the efforts of this court so far have resulted in further confusing the situation, and that the Schorlmg case, as the parent case, in attempting to unravel this apparently hopeless tangle, is so little understood and has been so confusing to the bar of the state, and to the lower courts, and even to the members of this court, that its decision must be held to have rendered the situation worse instead of better. After the able reargument of this cause in this court, and after full consideration of the briefs of counsel who appeared as friends of the court, there is no change in the alignment of this court upon the judgment previously rendered. With different courts of appeals reaching different conclusions, and therefore certifying causes to this court for review, with trial courts widely differing in their rulings upon pleadings and instructions to juries, with the bar of the state arguing pro and con as to the true meaning of the Schorlmg case, and the members of this court unable to agree upon its true meaning and application, the situation is indeed confused.
*24 In 1912, by constitutional amendment, this court was limited in its jurisdiction, and was given such measure of control over the volume of its business, and of the kind and character of the causes to be heard and determined, as to make it possible to reduce the number of cases to be heard, so that the court might keep the docket from congestion and at the same time retain full jurisdiction to authoritatively declare the law upon all important principles of law and issues arising under the Constitutions of the United States and the state of Ohio; and to declare the proper construction and interpretation of the statutes of the state of Ohio; and to declare the law upon all important questions of general law, where there is a want of uniformity in the decisions of the courts of appeals of the state of Ohio; and, finally, to declare the law upon all questions of public and great general interest. It was the spirit of that amendment to give to litigants one trial and one review, and since its adoption the primary function of this court is not to secure justice to the immediate parties; its ultimate end is to maintain uniformity of the decisions in the intermediate courts, to determine constitutional questions, and to make the law clearer for thé general public. Uniformity and simplification are the first great essentials in the interpretation, administration and enforcement of law. The simplest and therefore the best definition of law is the definition of Sir William Blackstone which declares it to be a rule of action commanding what is right and prohibiting what is wrong. “Rule” is defined to be a condition of uniformity. Law therefore uniformly commands the right and uniformly prohibits the wrong. The con *25 stitutional convention of 1851 recognized this principle in declaring that all laws of a general nature should have uniform operation throughout the state. The sound and salutary doctrine of stare decisis is as old as jurisprudence itself. It being recognized, therefore, that it is the province of this court to standardize, to clarify, to simplify and to make uniform the meaning and the application of rules of the common law, statutes.^and constitutions, what shall be said of the present situation of the subject of lawful requirements ? If six judges could agree, the offending statute could be declared unconstitutional. Where a statute is not declared unconstitutional, four judges might concur in a judgment which would settle the law as a rule of action for the guidance of the lower courts, the bar and the general public, provided the declarations of the majority were made so clear as not to be the subject of controversy. What shall be said, however, of a decision where the judge who wrote the majority opinion places a construction upon his own language which not only differs from those who concurred with him but also those who dissented from him?
Based upon the foregoing observations and measured by the foregoing standards, let us examine the situation presented by the various opinions on file in this case, and compare them with former adjudications of this court and with decisions of the supreme court of the United States.
Inasmuch as the Schorling case is the basis of the discussion in the opinions in the instant case, and also in nearly all the briefs on file, it should be stated at the outset that I disagree with the majority opinion in the Schorling case, and it seems necessary to *26 make brief reference to it. That case involved the construction of Sections 871-15 and 871-16, General Code, and held that the purpose and intent of those sections was to bring all employers within the scope and jurisdiction of the commission, and to impose upon them the obligation to comply with the orders and requirements of the commission when made, and that the provisions of those sections are not the lawful requirements referred to by and within the meaning of Section 35, Article II of the Constitution. It was held that they are not lawful requirements, because that term does not include a general course of conduct or those general duties and obligations of care and caution which rest upon employers for the protection of life, health and safety. It is evident that the majority were of the opinion at that time that any other construction of those sections would render them unconstitutional, because on page 331 of the opinion we find the following: “It seems inconceivable that the framers of the amendment, Section 35, Article II, used the term ‘lawful requirement’ in a sense that would render the statute passed pursuant to it invalid.” No. statement fis made or opinion expressed as to what provision of the constitution would thereby be violated, rendering the statute invalid. The discussion does, however, lead to the inference that it would be invalid because of not being sufficiently specific and definite to advise parties to a criminal proceeding of the nature and cause of the accusation, and, in a civil proceeding, because it would be conferring upon courts and juries legislative powers, permitting each court and jury to fix a separate standard of conduct.
*27 While there has been much discussion of the meaning and application of the Schorling case, it must be admitted that the third paragraph of the syllabus in that case, as elucidated by the statements on page 321 of the opinion, has caused the bench and bar generally to feel that the spirit of the Schorling case is fairly stated in the syllabus of the instant case. The inquiry is therefore resolved into the question as to how definite and specific must be the statement of a requirement to render it lawful. It is true that in the Schorling case Sections 15 and 16 of the Industrial Commission Act were not declared unconstitutional, but as that case has been understood by the bench and bar its effect is to render those sections unconstitutional. That decision was supported only by five members of thi3 court, and they were therefore powerless to declare those sections unconstitutional, and it seems reasonable to suppose therefore that if there had been six votes instead of five the Schorling case would have been disposed of in that manner.
It has been contended by those who seek to draw a distinction between the Patten case and the Schorling case that the language of Section 12593, General Code, is more definite and specific than the language in Sections 15 and 16 of the Industrial Commission Act. It is true that if Sections 15 and 16 are read without reference to any other sections, such views are well founded. But when Sections 15 and 16 are read in the light of the definition contained in paragraph 11 of Section 13, a different situation is presented. If, instead of using the word “safe” in Sections 15 and 16, we substitute the definition of that word found in Section 13, they will *28 read as follows: “Section 871-15, Every employer shall furnish employment which shall be as free from danger to the Ufe, health, safety or welfare as the■ nature of the employment will reasonably permit for the employes therein, and shall furnish a place of employment which shall be as free from danger to the life, health, safety or welfare as the nature of the employment will reasonably permit for the employes therein, and for frequenters thereof, and shall furnish and use safety devices and safeguards causing freedom from danger to the life, health, safety or welfare of employes or frequenters as the nature of the employment will reasonably permit and shall adopt and use methods and processes, follow and obey orders and prescribe hours of labor r easonably adequate to render such employment and places of employment as free from danger to the Ufe, health, safety or welfare of employes or frequenters as the nature of the employment will reasonably permit, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employes and frequenters.”
It is unnecessary to paraphrase Section 16, because the same result would be produced.
Let us now compare the language of Section 15, paraphrased as’ above, with the language of Section 12593, to determine whether the latter section is more definite and specific than the former:
“Sec. 12593. Whoever, employing or directing another to do or perform labor in erecting, repairing, altering or painting a house, building or other structure, knowingly or negligently furnishes, erects or eauses to be furnished for erection for and in the performance of said labor unsuitáble or im *29 proper scaffolding, hoists, stays, ladders or other mechanical contrivances which will not give proper protection to the life and limb of a person so employed or engaged, shall be fined not more than five hundred dollars or imprisoned not more than three months, or both.”
It is apparent that the difference, if any, is clearly favorable to Sections 15 and 16.
The error in the SchorUng case is further emphasized, and the difficult situation thereby rendered further intensified, when it is pointed out that the Schorling case was decided May 22, 1917, and that at the same term of this court, on April 17, 1917, the case of State v. Schaeffer, 96 Ohio St., 215, wa's decided, in which Judges Nichols, Jones, Matthias, Newman, Johnson and Wanamaker concurred, holding that a charge of manslaughter can be predicated upon a violation of Section 12603, General Code, the pertinent language of which is as follows: “Whoever operates a motor vehicle * * * at a speed greater than is reasonable or proper, having regard for width, traffic, use and the general and usual rules of such road or highway, or so as to endanger the property, life or limb of any person. ”
A stricter rule, so far as being definite and specific is concerned, is necessarily required in a criminal prosecution, because of the constitutional requirement that a person has a right to be advised of the nature and cause of the accusation against him.
We further point out that on March 6, 1917, the case of Neave Bldg. Co. v. Roudebush, Admr., 96 Ohio St., 40, was decided by the concurrence of Judges Nichols, Wanamaker, Johnson and Newman, and in that case a negligence suit was predicated *30 upon an ordinance of the city of Cincinnati as follows: “In every fireproof or semi-fireproof building now in existence or hereafter erected every window above the second story thereof shall be equipped with a suitable device which will permit the cleaning of the exterior of such windows without endangering life and limb. Provided, however, that such device need not be placed on any window that can be easily cleaned from within.” Surely the language which was the subject-matter of both of these latter cases was less specific and definite than the language of Sections 15 and 16 of the Industrial Commission Act, as defined by Section 13 of the act.
Another case indicating the even trend of the minds of this court is that of Leis v. Cleveland Ry. Co., 101 Ohio St., 162, in which, by unanimous judgment of the court, on April 6,1920, this court upheld the validity of certain ordinances of the city of Cleveland as follows:
“Any motorman or other person or persons having the charge or control of any motor or other car being operated upon any track or any street railroad in the city of Cleveland shall exercise all possible care and vigilance upon approaching any other car which has stopped for the purpose of receiving or letting off a passenger or passengers.
“Any car approaching another car which has been stopped for any purpose, and any car approaching a curve shall do so with the greatest care; and shall be under complete control of the person running the same.”
It should further be added that one of the results of the failure of the bench and bar to properly un *31 de'rstand and apply the Schorlmg case has been that attorneys have frequently brought eases to this court for certification and review which were believed to turn upon the principle of the Schorlmg case, and several of these motions have been sustained while others have been overruled. The procedure therefore under the lawful requirement statute is wholly lacking in that certainty and uniformity which should characterize the proceedings of this court.
In view of the fact that this court has declared in the Roudebush case, supra, that the window-cleaning ordinance of Cincinnati is valid, and in the Leis case, supra, that the Cleveland motor-car ordinance is valid, and has also declared that manslaughter can be predicated upon Section 12603, General Code, and it being beyond dispute that the language in those ordinances and in Section 12603 is less definite and specific than the language in Sections 15 and 16 of the Industrial Commission Act and in Section 12593, General Code, it must follow that any action brought by an employe against his employer for- the failure to observe the provisions of those ordinances, or Section 12603, General Code, must necessarily result in the court’s holding that such a suit could be maintained.
I have already referred to the difficulty which must necessarily be experienced by the bench in ruling upon these matters in pending suits, and the difficulties which must be experienced by the bar .in properly and safely advising their clients.; but a problem much greater and more mystifying is presented to the employers of the state, not versed in the. law, and yet presumed to know the law. With *32 no authority to whom they can turn, and no statute or decision well enough understood or clearly enough defined to enable them to steer between Scylla and Charybdis, what answer shall be made to them? There are a large number of statutes in Ohio, and a larger number of ordinances in the cities and villages of the state, which are the subject-matter of lawful requirements. Some of them have been declared valid, others have been declared invalid, though all of them seem to be couched in the same general form of expression. Until each and every statute and ordinance has been passed upon, what obligation rests upon the employers of the state?
Enough has been said of the Schorling■ case, but something further should be added relative to the erroneous views of the majority in the instant case. If the views of the majority are correct, then Section 12593, General Code, is invalid, and the legislature has exceeded its constitutional authority, and therefore the judgment of this court should not rest upon the judgment of four judges. The failure to have the concurrence of six judges, under the circumstances, and upon the reasoning declared in the majority opinion, should have resulted in this case being reversed.
The judgment of this court, agreed in by a bare majority, rendering the provisions of Section 12593, General Code, null and void, even though the decision does not in terms declare it to be unconstitutional, nevertheless constitutes a distinct transgression upon the constitution, because that section cannot be unenforceable upon any grounds other than its unconstitutionality, unless the language of the *33 section itself is meaningless or not capable of being understood. Section- 1465-76, General'Code, contains the expression “lawful requirement.” It does hot contain the expression found in the first paragraph of the syllabus cf the majority in the instant case, “lawful, specific and definite requirements.” Surely any statutory requirement becomes a lawful requirement, unless (a) the statute is meaningless and unintelligible, or (b) the statute is unconstitutional. What is the test of unlawfúlness in a requirement? The majority answer that the test is whether the statute is so specific and definite as to advise an employer of his legal obligations. If this is the true test, and if this statute will not stand such a test, then it is clearly unconstitutional. This is clearly the declaration of the supreme court of the United States in the case of United States v. L. Cohen Grocery Co., 255 U. S., 81. It was held in that case that because the Lever Act, maMng it unlawful to mate any unjust or unreasonable rate or charge in dealing in necessaries, fixed no ascertainable standard of guilt, it “amounted to a delegation by congress of legislative power to courts and juries to determine what acts should be held to be criminal and punishable.” True, that was a federal statute being construed by a federal court. But the Constitution of Ohio delegates all legislative power to the legislative branch of the government and forbids its exercise by either of the other branches. The majority opinion published after the first argument of the instant case evidently recognized the force of that federal decision, and not only made a reference to that case but a rather lengthy quotation from it. The majority of this court evidently observed the *34 fatal position in which they were placed by any reference to that case, and snch reference has been stricken out of the revised opinion since the reargument. That case may be taken out of the opinion of this court, but its fatal effect cannot be eliminated from the judgment of this court. A judgment which holds Section 12593, General Code, unenforceable in a civil proceeding must for a stronger reason hold it unenforceable in a criminal prosecution, and therefore the whole statute, not only in its criminal but also in its civil remedy, is rendered unconstitutional. The fact that the majority opinion has carefully avoided the use of the word unconstitutional does not by any means affect the result. Neither does such careful avoidance obviate the fact that a statute has been declared unconstitutional by less than the number of concurrences required by Section 2, Article IV of the Constitution as amended in 1912.
To further illustrate the unfortunate situation of this entire subject it should be pointed out that there are at this time a number of cases involving the same subject-matter, under different statutes, which cases have been submitted to this court and not yet finally disposed of. It so happens that some of these statutes were declared unenforceable by the court of appeals, thereby making it necessary to have only four votes in this court for an affirmance of those judgments, resulting in declaring those particular statutes unconstitutional in a proper way. In other cases, like the instant case, six concurrences are required. Numerous suits are still pending in courts of appeals, and it is conceivable that a large number of other suits will traverse the lower courts. Although it is apparent that all such statutes are couched in *35 much the same language, it is fair to suppose in the future as in the past that some of these statutes will be upheld and others declared unenforceable.
While there is a wide divergence of opinion concerning the meaning and application of the Schorling case there can be no difference of opinion as to the principles declared by the syllabus and majority opinion in the instant case. A majority of this court undoubtedly have the right to declare the law upon all propositions, except that .of declaring a .statute unconstitutional in reversal of a judgment of the court of appeals. The pronouncement of a majority would ordinarily be accepted as final. Their pronouncements cannot, however, be accepted as a finality in the face of so many decisions involving identical principles which have been decided directly to the contrary.
If the former decisions of this court upon this general subject were uniform and harmonious I would be willing to accept the established doctrine and concur therein regardless of any convictions I might have on the subject, in the interest of uniformity and out of deference to the doctrine of stare decisis. There is, however, in this situation, such lack of uniformity, and such contradiction in principle, that it is my duty as a member of this court to declare my belief that the declarations of the Schorlmg case and the declarations of the majority in the instant case are unsound and that the true doctrine is declared in the other three eases herein discussed.
This discussion has painted a dark picture, and the question naturally arises: What is the remedy? The answer is difficult; but it may be suggested, *36 first, that the provisions of the constitution requiring the concurrence of six judges in order to declare a law unconstitutional should be observed both in the spirit and to the letter; second, that it is the clear duty of this court to so modify the declarations found in a, number of its recent decisions as to make, them consistent and uniform. It is the duty of this court to so unify, to so simplify and to so construe the statutés of the staté of Ohio, and to so harmonize the decisions of the courts of Ohio, that not only the people will be able to understand and know the law, but that the bar will be able to expound the law, and the lower courts be able to construe and apply the law. If it'is impossible for this court to bring about such a state of affairs, then' it must be held that the remedy lies alone with the legislature: