# UNITED STATES v. L. COHEN GROCERY COMPANY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 324.  Argued October 18, 19, 1920.—Decided February 28, 1921.

1. Section 4 of the Food Control Act of August 10, 1917, as amended October 22, 1919, in denouncing and attaching a penalty of fine or imprisonment to the making by any person of "any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries," must be construed as forbidding and penalizing the exaction of an excessive price upon the sale of a commodity. P. 88.

2. To that extent the section, since it sets up no ascertainable standard of guilt, is repugnant to the Fifth and Sixth Amendments to the Constitution, which require due process of law and that persons accused of crime shall be adequately informed of the nature and cause of the accusation. P. 89.

3. The mere existence of a state of war did not suspend these guarantees of the Amendments or relieve Congress from their limitations. P. 88.

264 Fed. Rep. 218, affirmed.

THIS is one of several cases (see *post*, 98, 100, 102, 104, 106, 108, 109) involving the constitutionality, in part, of § 4 of the Act of August 10, 1917, c. 53, 40 Stat. 276, known as the Food Control or Lever Act, as amended by § 2 of the Act of October 22, 1919, c. 80, 41 Stat. 297, which is set out below.[1]

---

[1] "That it is hereby made unlawful for any person willfully to destroy any necessaries for the purpose of enhancing the price or restricting the supply thereof; knowingly to commit waste or willfully to permit preventable deterioration of any necessaries in or in connection with their production, manufacture, or distribution; to hoard, as defined in section 6 of this Act, any necessaries; to monopolize or attempt to monopolize, either locally or generally, any necessaries; to engage in any discriminatory and unfair, or any deceptive or wasteful practice or device, or to make any unjust or unreasonable rate or charge in

An indictment charged, in the first count, that the Cohen Company, a dealer in sugar and other necessaries, wilfully and feloniously made an unjust and unreasonable rate and charge in handling and dealing in a certain necessary, to wit, sugar, in that it wilfully and feloniously demanded of a person named, who made the purchase, a stated sum for a stated amount of sugar, which, as the company knew, was an unjust and unreasonable rate. The second count described a similar transaction.

The defendant successfully demurred and the case was brought here by the Government under the Criminal Appeals Act.

*The Solicitor General* for the United States:

The first contention made against the statute is that the offense charged was not a crime under the laws of the United States until the passage of the Act of 1919, and that, at that time, Congress was without power to enact

handling or dealing in or with any necessaries; to conspire, combine, agree, or arrange with any other person, (a) to limit the facilities for transporting, producing, harvesting, manufacturing, supplying, storing, or dealing in any necessaries; (b) to restrict the supply of any necessaries; (c) to restrict distribution of any necessaries; (d) to prevent, limit, or lessen the manufacture or production of any necessaries in order to enhance the price thereof; or (e) to exact excessive prices for any necessaries, or to aid or abet the doing of any act made unlawful by this section. Any person violating any of the provisions of this section upon conviction thereof shall be fined not exceeding $5,000 or be imprisoned for not more than two years, or both: *Provided,* That this section shall not apply to any farmer, gardener, horticulturist, vineyardist, planter, ranchman, dairyman, stockman, or other agriculturist, with respect to the farm products produced or raised upon land owned, leased, or cultivated by him: *Provided further,* That nothing in this Act shall be construed to forbid or make unlawful collective bargaining by any coöperative association or other association of farmers, dairymen, gardeners, or other producers of farm products with respect to the farm products produced or raised by its members upon land owned, leased, or cultivated by them."

such legislation because actual hostilities in our war with Germany had ceased. The District Judge correctly held that this contention was not tenable. *Stewart* v. *Kahn,* 11 Wall. 493, 506; *Ruppert* v. *Caffey,* 251 U. S. 264; *Hamilton* v. *Kentucky Distilleries Co.,* 251 U. S. 146.

The war conditions were such indeed as to make it imperative that Congress exert whatever power it had to encourage the production of necessaries and to regulate their prices.

The regulation of the prices of the necessaries of life is a proper governmental function which, when deemed necessary for the prosecution of a war, Congress may exercise. *Munn* v. *Illinois,* 94 U. S. 113, 124; Tucker's Blackstone, vol. 4, pp. 159, 160; Russell on Crimes, 7th ed., vol. 2, p. 1919; *King* v. *Waddington,* 1 East, 143, 163; Statute of Laborers, *anno* 1349, 2 Stat. of England, c. vi, pp. 26, 28; Statute of Herrings, anno 1357, id., p. 117. See also: 2 *id.,* p. 162, anno 1363; 2 *id.,* c. viii, pp. 313, 314, anno 1389; 3 *id.,* c. xii, p. 196, anno 1433; 4 *id.,* cc. viii, ix, p. 41, anno 1487; 4 *id.,* c. v, p. 220, anno 1531; 4 *id.,* c. ii, pp. 263, 264, anno 1533; 4 *id.,* c. xiv, p. 439, anno 1536; 5 *id.,* c. xxi, p. 347, anno 1549; 12 *id.,* c. xviii, p. 77, anno 1709; *Budd* v. *New York,* 143 U. S. 517; *Brass* v. *Stoeser,* 153 U. S. 391; *German Alliance Insurance Co.* v. *Lewis,* 233 U. S. 389, 410.

It was impracticable to lay down any fixed and unvarying schedule of profits that would be reasonable. No rule that would fix a certain percentage of cost price as a legitimate profit could, with justice, be uniformly applied. The rate of profit that may be legitimately charged varies with the cost of handling different articles and in different lines of business.

The indictment is not open to the objection that it does not sufficiently give the defendant notice of the accusation, and is a good indictment unless it can be said that the act upon which it is based is unconstitutional.

The Act of 1919 is not subject to the objection that it is too vague and uncertain. The question is whether Congress may declare it to be a criminal offense to charge an unreasonable price for necessaries, leaving it to a jury to determine, from all the facts and circumstances, whether a particular charge is reasonable or unreasonable; or whether it is necessary for the act itself to provide a more definite standard by which the jury must be governed.

If the reasonableness of a rate or charge can be said to be a fact, then undoubtedly it may be left to the determination of the jury under the circumstances disclosed by the evidence.

Undoubtedly a statute creating an offense must use language which will convey to the average mind information as to the act or fact which it is intended to make criminal. *United States* v. *Brewer*, 139 U. S. 278, 288. But statutes describing crimes must necessarily be more or less general in their terms. It is impossible to fix rules of conduct to cover every circumstance or condition that may arise. It is perhaps equally impossible to frame a statute so that all men will agree as to just what circumstances will or will not constitute the crime denounced. There are certain standards both of law and of fact which may be assumed in enacting legislation. When these standards are invoked, a question of fact is presented for the jury to determine under the particular facts of each case, and it is no objection to the statute that it is necessary to invoke these external standards. *Miller* v. *Strahl*, 239 U. S. 426, 434.

To determine from the evidence in a given case what is reasonable or unreasonable is to perform exactly the same function which a jury performs when the question of negligence is submitted to it.

That the language used in this statute is not so general and uncertain as to be subject to constitutional objections would seem now to be definitely settled by recent rulings

of this court. *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86; *Nash* v. *United States,* 229 U. S. 373.

If it can constitutionally be left to the jury to determine, from the facts and circumstances of a particular case, whether a given contract or combination unduly restricts competition or restrains trade, it is difficult to see any principle upon which it can be denied that the same jury may be left to determine, from a given state of facts and circumstances, whether a particular price demanded for necessaries is reasonable or unreasonable. Later cases have emphasized the rule laid down in the. *Nash Case.* *Omaechevarria* v. *Idaho,* 246 U. S. 343; *Arizona Employers' Liability Cases,* 250 U. S. 400, 432. Distinguishing: *International Harvester Co.* v. *Kentucky,* 234 U. S. 216. *United States* v. *Rosenblum,* 264 Fed. Rep. 578, 582; *United States* v. *Oglesby Grocery Co.,* 264 Fed. Rep. 691, 695.

This principle, as applied to this case, is not a new departure, but has consistently been applied to numerous criminal laws. See *United States* v. *Oglesby Grocery Co., supra.*

*Mr. Louis B. Sher* and *Mr. Chester H. Krum* for defendant in error.

*Mr. William D. Guthrie, Mr. Benjamin F. Spellman* and *Mr. Bernard Hershkopf,* by leave of court, filed a brief as *amici curiæ.*

*Mr. John A. Marshall, Mr. D. N. Straup, Mr. Joel F. Nibley* and *Mr. Thomas Marioneaux,* by leave of court, filed a brief as *amici curiæ.*

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Required on this direct appeal to decide whether Congress under the Constitution had authority to adopt

§ 4 of the Lever Act as reënacted in 1919, we reproduce the section so far as relevant (Act of October 22, 1919, c. 80, § 2, 41 Stat. 297):

"That it is hereby made unlawful for any person willfully . . . to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries; to conspire, combine, agree, or arrange with any other person . . . . (e) to exact excessive prices for any necessaries . . . Any person violating any of the provisions of this section upon conviction thereof shall be fined not exceeding $5,000 or be imprisoned for not more than two years, or both: . . ."

The text thus reproduced is followed by two provisos exempting from the operation either of the section or of the act enumerated persons or classes of persons engaged in agricultural or similar pursuits.

Comparing the reënacted section with the original text (Act of August 10, 1917, c. 53, § 4, 40 Stat. 276), it will be seen that the only changes made by the reënactment were the insertion of the penalty clause and an enlargement of the enumerated exemptions.

In each of two counts the defendant, the Cohen Grocery Company, alleged to be a dealer in sugar and other necessaries in the City of St. Louis, was charged with violating this section by wilfully and feloniously making an unjust and unreasonable rate and charge in handling and dealing in a certain necessary, the specification in the first count being a sale for $10.07 of about 50 lbs. of sugar, and that in the second, of a 100-pound bag of sugar for $19.50.

The defendant demurred on the following grounds: (a) That both counts were so vague as not to inform it of the nature and cause of the accusation; (b) that the statute upon which the indictment was based was subject to the same infirmity because it was so indefinite as not to enable it to be known what was forbidden, and

therefore amounted to a delegation by Congress of legis-
lative power to courts and juries to determine what acts
should be held to be criminal and punishable; and (c)
that as the country was virtually at peace Congress had
no power to regulate the subject with which the section
dealt.   In passing on the demurrer, the court, declaring
that this court had settled that until the official decla-
ration of peace there was a status of war, nevertheless
decided that such conclusion was wholly negligible as to
the other issues raised by the demurrer, since it was
equally well settled by this court that the mere status
of war did not of its own force suspend or limit the effect
of the Constitution, but only caused limitations, which the
Constitution made applicable as the necessary and ap-
propriate result of the status of war, to become operative.
Holding that this latter result was not the case as to the
particular provisions of the Fifth and Sixth Amendments
which it had under consideration, that is, as to the pro-
hibitions which those amendments imposed upon Con-
gress against delegating legislative power to courts and
juries, against penalizing indefinite acts, and against
depriving the citizen of the right to be informed of the
nature and cause of the accusation against him, the court,
giving effect to the amendments in question, came to
consider the grounds of demurrer relating to those sub-
jects.   In doing so and referring to an opinion previously
expressed by it in charging a jury, the court said:

"Congress alone has power to define crimes against
the United States.  This power cannot be delegated either
to the courts or to the juries of this country. . . .

"Therefore, because the law is vague, indefinite, and
uncertain, and because it fixes no immutable standard
of guilt, but leaves such standard to the variant views
of the different courts and juries which may be called
on to enforce it, and because it does not inform defend-
ant of the nature and cause of the accusation against it,

I think it is constitutionally invalid, and that the demurrer offered by the defendant ought to be sustained."

The indictment was therefore quashed.

In cases submitted at about the same time with the one before us, and involving identical questions with those here in issue, it is contended that the section does not embrace the matters charged. We come, therefore, on our own motion in this case to dispose of that subject, since if well founded the contention would render a consideration of the constitutional questions unnecessary. The basis upon which the contention rests is that the words of the section do not embrace the price at which a commodity is sold, and, at any rate, the receipt of such price is not thereby intended to be penalized. We are of opinion, however, that these propositions are without merit, first, because the words of the section, as reënacted, are broad enough to embrace the price for which a commodity is sold, and second, because, as the amended section plainly imposes a penalty for the acts which it includes when committed after its passage, the fact that the section before its reënactment contained no penalty is of no moment. This must be the case unless it can be said that the failure at one time to impose a penalty for a forbidden act furnishes an adequate ground for preventing the subsequent enforcement of a penalty which is specifically and unmistakably provided.

We are of opinion that the court below was clearly right in ruling that the decisions of this court indisputably establish that the mere existence of a state of war could not suspend or change the operation upon the power of Congress of the guaranties and limitations of the Fifth and Sixth Amendments as to questions such as we are here passing upon. *Ex parte Milligan,* 4 Wall. 2, 121–127; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 336; *United States* v. *Joint Traffic Association,* 171 U. S. 505, 571; *McCray* v. *United States,* 195 U. S. 27, 61;

*United States* v. *Cress*, 243 U. S. 316, 326; *Hamilton* v. *Kentucky Distilleries Co.*, 251 U. S. 146, 156. It follows that, in testing the operation of the Constitution upon the subject here involved, the question of the existence or non-existence of a state of war becomes negligible, and we put it out of view.

The sole remaining inquiry, therefore, is the certainty or uncertainty of the text in question, that is, whether the words "That it is hereby made unlawful for any person willfully . . . to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries," constituted a fixing by Congress of an ascertainable standard of guilt and are adequate to inform persons accused of violation thereof of the nature and cause of the accusation against them. That they are not, we are of opinion, so clearly results from their mere statement as to render elaboration on the subject wholly unnecessary. Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below, in its opinion, to the effect that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury. And that this is not a mere abstraction, finds abundant demonstration in the cases now before us, since in the briefs in these cases the conflicting results which have arisen from the painstaking attempts of enlightened judges in seeking to carry out the statute in cases brought before them are vividly

portrayed. As illustrative of this situation we append in the margin a statement from one of the briefs on the subject.[1] And again, this condition would be additionally

---

[1] In *United States* v. *Leonard*, District Judge Howe of the Northern District of New York, held that in determining whether or not a price was unreasonable, the jury should take into consideration *"what prices the defendants paid for the goods in the market*—whether they bought them in the ordinary course of trade, paying the market price at the time, the length of time defendants have carried them in stock, the expense of carrying on the business, what a fair and reasonable profit on the goods would be, and all the other facts and circumstances in and about the transaction, *but not how much the market price had advanced from the time the goods were purchased to the time they were sold."*

In *United States* v. *Oglesby Grocery Co.*, District Judge Sibley, of the Northern District of Georgia, said [264 Fed. Rep. 691; 695]:

"The words used by Congress in reference to a well-established course of business *fairly indicate the usual and established scale of charges and prices in peace times as a basis, coupled with some inflexibility in view of changing conditions.* The statute may be construed to forbid, in time of war, any departure from the usual and established scale of charges and prices in time of peace, which is not justified by some special circumstance of the commodity or dealer."

Judge McCall, of the Western District of Tennessee, in his charge to the grand jury, stated that, if a shoe dealer bought two orders of exactly the same kind of shoes at different times and at different prices, the first lot at $8 per pair and the second lot after the price had gone up to $12 per pair "and then he sells both lots of those shoes at eighteen dollars, he is profiteering clearly upon the first lot of [shoes] that only cost him $8. Now he does that upon the theory that if he sells these shoes out and goes into the market and buys again he will have to pay the higher price, but that doesn't excuse him. He is entitled to make a reasonable profit, but he certainly hasn't the right to take advantage of the former low purchase and take the same profit on them that he gets on the twelve dollar shoes."

In *United States* v. *Myatt*, District Judge Connor, of the Eastern District of North Carolina, said [264 Fed. Rep. 442, 450]:

"It will be observed that the statute does not declare it unlawful to make an unjust or unreasonable profit upon sugar. The profit made is not the test, and may be entirely irrelevant to the guilt of the defendant. He may, within the language of the statute, make an unreasonable and therefore unlawful 'rate or charge' without making

obvious if we stopped to recur to the persistent efforts which, the records disclose, were made by administrative officers, doubtless inspired by a zealous effort to discharge their duty, to establish a standard of their own to be used as a basis to render the section possible of execution.

That it results from the consideration which we have stated that the section before us was void for repugnancy to the Constitution is not open to question. *United States v. Reese*, 92 U. S. 214, 219–220; *United States v. Brewer*, 139 U. S. 278, 288; *Todd v. United States*, 158 U. S. 278,

---

any profit, or the rate or charge made may involve a loss to him upon the purchasing price."

District Judge Hand, of the Northern District of New York, in his charge to the grand jury, said:

"Furthermore, it is not the particular profits that the individual himself makes which is the basis of the unreasonable charge, but it is whether the charge is such as gives unreasonable profit—not to him, but if established generally in the trade. The law does not mean to say that all people shall charge the same profit. If I am a particularly skillful merchant or manufacturer and I can make profits which are greater than the run of people in my business, I am allowed to make those profits. So much am I allowed. But if I am charging more than a reasonable price, taking the industry as a whole, I am not allowed to keep that profit because on other items I am sustaining a loss."

In *United States v. Goldberg*, District Judge Bledsoe, of the Southern District of California, charged the jury that, in passing on the question of the reasonableness of prices for sugar the jury should take into consideration, among other circumstances, the following:

"That there was, if you find that there was, a market price here in the community or generally with respect to the profit that normally should be made upon sugar sold either by manufacturers or jobbers and retailers."

In *United States v. Culbertson, etc., Co.*, District Judge Rudkin, of the Eastern District of Washington, on the trial of defendant on July 8, 1920, charged the jury, among other things, that as a matter of law, defendant was entitled to sell its goods on the basis of the actual *market value* at the time and place of sale over and above the expense of handling the goods, and a reasonable profit, and that the original cost price became immaterial, except as it threw some light upon the market value.

282; and see *United States* v. *Sharp*, 27 Fed. Cas. 1041, 1043; *Chicago & Northwestern Ry. Co.* v. *Dey*, 35 Fed. Rep. 866, 876; *Tozer* v. *United States*, 52 Fed. Rep. 917, 919–920; *United States* v. *Capital Traction Co.*, 34 App. D. C. 592; *United States* v. *Pennsylvania R. R. Co.*, 242 U. S. 208, 237–238.

But decided cases are referred to which it is insisted sustain the contrary view. *Waters-Pierce Oil Co.* v. *Texas*, 212 U. S. 86; *Nash* v. *United States*, 229 U. S. 373; *Fox* v. *Washington*, 236 U. S. 273; *Miller* v. *Strahl*, 239 U. S. 426; *Omaechevarria* v. *Idaho*, 246 U. S. 343. We need not stop to review them, however, first, because their inappositeness is necessarily demonstrated when it is observed that if the contention as to their effect were true it would result, in view of the text of the statute, that no standard whatever was required, no information as to the nature and cause of the accusation was essential, and that it was competent to delegate legislative power, in the very teeth of the settled significance of the Fifth and Sixth Amendments and of other plainly applicable provisions of the Constitution; and second, because the cases relied upon all rested upon the conclusion that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded. Indeed, the distinction between the cases relied upon and those establishing the general principle to which we have referred, and which we now apply and uphold as a matter of reason and authority, is so clearly pointed out in decided cases that we deem it only necessary to cite them. *International Harvester Co.* v. *Kentucky*, 234 U. S. 216, 221; *Collins* v. *Kentucky*, 234 U. S. 634, 637; *American Seeding Machine Co.* v. *Kentucky*, 236 U. S. 660, 662; and see *United States* v. *Pennsylvania R. R. Co.*, 242 U. S. 208, 237–238.

It follows from what we have said that, not forgetful of our duty to sustain the constitutionality of the statute

if ground can possibly be found to do so, we are nevertheless compelled in this case to say that we think the court below was clearly right in holding the statute void for repugnancy to the Constitution, and its judgment quashing the indictment on that ground must be, and it is, hereby affirmed.

*Affirmed.*

MR. JUSTICE DAY took no part in the consideration or decision of this case.

MR. JUSTICE PITNEY and MR. JUSTICE BRANDEIS concurred in the result, the former delivering the following opinion in which the latter concurred:

I concur in the judgment of the court, but not in the reasoning upon which it is rested.

Defendant was indicted upon two counts, alike in form, charging in each case that it "did wilfully and feloniously make an unjust and unreasonable rate and charge in handling and dealing in a certain necessary, to wit, sugar," in that it demanded, exacted and collected excessive prices for specified quantities of sugar purchased from it, in violation of the Lever Act (Act of October 22, 1919, c. 80, § 2, 41 Stat. 297, 298, amending § 4 of Act of August 10, 1917, c. 53, 40 Stat. 276, 277). I am convinced that the exacting of excessive prices upon the sale of merchandise is not within the meaning of that provision of the act which is cited as denouncing it; that the act does not make it a criminal offense; that for this reason the demurrer to the indictment was properly sustained; and that whether the provision is in conflict with the Fifth or Sixth Amendment is a question not necessarily raised, and which ought not to be passed upon.

In order to appreciate the point it is necessary to quote entire so much of the section as defines the crimes thereby denounced. It reads as follows:

"That it is hereby made unlawful for any person willfully to destroy any necessaries for the purpose of enhancing the price or restricting the supply thereof; knowingly to commit waste or willfully to permit preventable deterioration of any necessaries in or in connection with their production, manufacture, or distribution; to hoard, as defined in section 6 of this Act, any necessaries; to monopolize or attempt to monopolize, either locally or generally, any necessaries; to engage in any discriminatory and unfair, or any deceptive or wasteful practice or device, or to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries; to conspire, combine, agree, or arrange with any other person, (a) to limit the facilities for transporting, producing, harvesting, manufacturing, supplying, storing, or dealing in any necessaries; (b) to restrict the supply of any necessaries; (c) to restrict distribution of any necessaries; (d) to prevent, limit, or lessen the manufacture or production of any necessaries in order to enhance the price thereof; or (e) to exact excessive prices for any necessaries, or to aid or abet the doing of any act made unlawful by this section. Any person violating any of the provisions of this section upon conviction thereof shall be fined not exceeding $5,000 or be imprisoned for not more than two years, or both: *Provided,* . . . " etc.

For a definition of "hoarding," the section refers to § 6 of the original act (40 Stat. 278), which declares that necessaries shall be deemed to be hoarded, within the meaning of the act, when (*inter alia*) "withheld, whether by possession or under any contract or arrangement, from the market by any person for the purpose of unreasonably increasing or diminishing the price."

The court holds that the words "to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries" are broad enough to embrace the exaction of an excessive price upon a sale of such

merchandise. Why Congress should employ so unskillful and ambiguous a phrase for the purpose when it would have been easy to express the supposed purpose in briefer and more lucid words, it is difficult to understand. If the words were to be taken alone, and without reference to the context, it might be possible to stretch their meaning so as to include the exaction of an excessive price. But to do this with a statute defining a criminal offense would, it seems to me, be inconsistent with established rules for construing penal statutes; not only so, but it would violate the rule that a statute is not to be so construed as to bring it into conflict with the Constitution, unless such construction is imperatively required by its plain words. The construction adopted by the court is not thus required. "To make a rate or charge in handling or dealing in or with" merchandise, imports the fixing of compensation for services, rather than the price at which goods are to be sold. It may refer to charges for buying, selling, hauling, handling, storage, or the like.

But the clause in question does not stand alone. It forms a part of a section in which the question of prices is dealt with four times: once in the initial prohibition against destroying any necessaries for the purpose of enhancing the price; a second time in the prohibition of hoarding, defined as including a withholding from market for the purpose of unreasonably increasing or diminishing the price; a third time in the prohibition of a conspiracy to limit the production of necessaries in order to enhance the price; and, finally, in the prohibition of a conspiracy "to exact excessive prices for any necessaries." It seems to me clear, upon the plainest principles of construction, that the change of phrase must be deemed to import a difference of purpose, and that "to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries" must be taken to mean something else than the exaction of an excessive price. It should be

observed how closely it is coupled with a cognate offense: "to engage in any discriminatory and unfair, or any deceptive or wasteful practice or device, or to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries." Evidently the words "in handling or dealing," etc., qualify "wasteful practice or device," as well as "unjust or unreasonable rate or charge."

That it is not altogether evident what was intended to be included within "unjust or unreasonable rate or charge in handling or dealing in or with any necessaries," may be conceded. So much the more reason for not extending the words by construction so as to make criminal that which is not clearly within their meaning; and for not giving to them a meaning which brings the act into conflict with the Constitution;—and for not expanding the unconstitutional reach of the act, supposing that even without the particular application now made of the quoted words it would be repugnant to the fundamental law.

It is to my mind plain that § 4 was not intended to control the individual dealer with respect to the prices that he might exact, beyond prohibiting him from destroying any necessaries for the purpose of enhancing the price, and from withholding them from the market for a like purpose. So long as he acts alone he is left uncontrolled except by the ordinary processes of competition, his own sense of fairness, and his own interest. A conspiracy with others to exact excessive prices is an entirely different matter, and *that* is clearly prohibited.

And this brings me to another point: Section 4 naturally divides itself into two parts; the first portion denounces a number of substantive offenses; the second portion denounces a conspiracy to commit any one of a number of offenses, but these do not in terms include any of the offenses specifically prohibited in the earlier

portion. This, as it seems to me, is significant. Section 37 of the Criminal Code (Act of March 4, 1909, c. 321, 35 Stat. 1088, 1096), makes it criminal for two or more persons to conspire to commit any offense against the United States, if one or more of them do any act to effect the object of the conspiracy. Hence it was not necessary for Congress to declare in the Lever Act that a conspiracy to commit any of the offenses defined in the first part of § 4 was punishable criminally. But it proceeded in the latter part to declare that a conspiracy to do any one of certain other acts, should be criminal. It seems to me too plain for argument that, under the circumstances, the inclusion in that part of the section of certain acts as forming the object of a criminal conspiracy amounts to a legislative declaration that, in the absence of conspiracy, those acts are not intended to be punished criminally. One of them is "to exact excessive prices for any necessaries."

Still further: Sections 14 and 25 of the original act (40 Stat. 281, 284) specifically deal with the question of official price-fixing of certain articles of prime necessity—wheat, coal, and coke—and furnish additional evidence that in the framing of this act, when Congress had price-fixing in mind and the regulation of "prices," it employed that simple term, and that it did not refer to prices in the provision of § 4 upon which the indictment in this case rests.

For these reasons, I regard it as unnecessary to pass upon the question whether that provision is in conflict with the Constitution of the United States.