**UNITED STATES of America,**
**Appellee,**

v.

**Robert Bolivar DePUGH, Appellant.**
**No. 20192.**

United States Court of Appeals,
Eighth Circuit.

Nov. 25, 1970.

Rehearing Denied En Banc and Rehearing Denied Dec. 21, 1970.

---

Robert G. Duncan, Kansas City, Mo., for appellant.

Calvin K. Hamilton, First Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT and BRIGHT, Circuit Judges, and NEVILLE, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal in forma pauperis by defendant Robert Bolivar DePugh from final judgment of conviction on an indictment charging bail jumping in violation of 18 U.S.C.A. § 3150. Defendant was found guilty by a jury and sentenced to four years imprisonment.

On November 14, 1966, defendant was found guilty by a jury on each of three counts of an indictment. Sentences were imposed on January 17, 1967. Defendant pending appeal was released on a $5,000 appeal bond. Upon appeal, we reversed the conviction on Counts I and III with direction that such counts be dismissed and reversed the conviction on Count II with remand for a new trial on that count. The facts are fully set out in our opinion, DePugh v. United States, 8 Cir., 401 F.2d 346, filed September 30, 1968.

Upon remand, the trial court on November 15, 1968, held a hearing on a motion by the government to set Count II for retrial. Mr. Gilwee, who had represented the defendant in a prior litigation, appeared. Defendant did not appear. An order was entered on that date setting Count II for retrial on December 3, 1968, at 9:30 a. m. A copy of the order was sent by certified mail to defendant at his last known address as given in the appeal bond—Norborne, Missouri. The letter containing the order was received and receipted for by Ramona DePugh, defendant's wife, on November 19, 1968.

Attorney Gilwee as a witness testified that he attempted to notify the defendant of the trial setting. He had no personal information as to defendant's whereabouts. He talked by telephone to defendant's wife but was unable to obtain the defendant's address. He requested the wife to notify defendant and to tell him to get in contact with him, but no contact was made.

When the case was reached for trial pursuant to the assignment on December 3, 1968, the defendant did not appear. Mr. Gilwee appeared and stated that he was unable to locate the defendant. Defendant had not been seen since February 1968. It was reported that he had disappeared and went underground (about February 1968). He was not found until July 12, 1969, when he was arrested by the FBI in New Mexico where he was using an assumed name. Defendant had charges pending against him in the state of Washington. He had previously been convicted in the Western District of Missouri for violating 15 U.S.C.A. § 902(e) and had been sentenced to one year's imprisonment. His conviction on this charge was affirmed April 15, 1968. See DePugh v. United States, 8 Cir., 393 F.2d 367.

Mr. Horsfall, who knew defendant while he was in New Mexico, testified that he heard a conversation on or about October 10, 1968, between DePugh and Peyson concerning which he testified as follows:

"A Well, the discussion was about the cases that were against Mr. DePugh and Mr. Peyson here in Kansas City. And Mr. DePugh told Mr. Peyson that two of the charges had been dropped, and that Mr. Peyson would have a pretty good chance of beating the third charge. And he asked him if—asked Mr. Peyson—Mr. DePugh asked Mr. Peyson if he wanted to go back, and Mr. Peyson said no. And it was also discussed at that time that Mr. DePugh—

Q (By Mr. Hamilton) By 'discussed', who said what?

A Well, Mr. DePugh said that he couldn't come back at that time because he had a one-year prison sentence to serve if he did."

The appeal bond upon which defendant was released is conditioned upon defendant's appearance in the District Court and the Court of Appeals "in ac-

cordance with all orders and directions of said courts relating to the appearance of the appellant in the case of United States v. Robert Bolivar DePugh, No. 22263, and the appeal therefrom." The court in fixing the bond stated the bond is only for the limited purpose of assuring appearance when required.

The points relied upon for reversal are:

I. Eighteen U.S.C.A. § 3150 is so vague and indefinite as to fail to establish sufficient standards of guilt in violation of the Sixth Amendment and the requirements of due process of law.

II. The evidence is insufficient to support a conviction as there is no evidence the court complied with the notice provision of 18 U.S.C.A. § 3150.

III. The indictment is fatally defective in failing to allege the bond had been forfeited.

IV. The court erred in instructing that proof of actual notice to the defendant of the trial date was not an essential element of the offense.

V. The court erred in making comments on the evidence prejudicial to the defendant.

We hold each of such contentions lacks merit for the reasons hereinafter stated. We affirm the conviction.

### I.

Eighteen U.S.C.A. § 3150 and related sections are part of the Bail Reform Act of 1966, enacted June 22, 1966, and effective ninety days after enactment. The Act, which changes preexisting law with respect to bail, became effective ninety days after enactment which was only a few months before the defendant posted his appeal bond, on January 24, 1967. Section 3150 reads:

"Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both, * * *."

■ We consider § 3150 to be sufficiently definite to meet constitutional requirements. The term "judicial officer" is defined by § 3152. Rule 43, Fed. R.Crim.P., requires a personal presence of the defendant at each stage of the criminal proceeding from arraignment to sentence. Section 3150 in plain language requires a person released on bail to appear before the court when required. Any possible ambiguity of the "when required" provision for appearance is cured by the provision that the failure to appear must be willful.

In Screws v. United States, 325 U.S. 91, 101–102, 65 S.Ct. 1031, 1035–1036, 89 L.Ed. 1495, the Court states:

"The Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning. See United States v. [L] Cohen Grocery Co., 255 U.S. 81, 41 S. Ct. 298, 65 L.Ed. 516, *supra*. But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law."

■■ A reasonable interpretation of the statute would contemplate that a defendant on bail be given reasonable notice as to any required court appearance. The government did all that it possibly could to give such notice. Had defend-

ant not chosen to go into hiding for a prolonged period, he would have received such notice. Similarly, if he had kept his attorneys or the court advised as to his whereabouts, he would have received the notice. Defendant at the time that he gave the appearance bond knew that he would have to surrender to serve his sentence if his conviction was affirmed, and he also knew that. in event a new trial was ordered he would have to appear for trial. Defendant by willfully becoming a fugitive from justice is in no position to complain about not personally receiving notice of the date of the trial.

## II.

Defendant contends that § 3150 applies only to persons released "pursuant to this chapter." The reference is to Chapter 207, 18 U.S.C.A., which contains the Bail Reform Act of 1966 of which § 3150 is a part. Defendant argues that at the time of the issuance of the appeal bond neither the trial court, the prosecutor nor defense attorney was aware of the recently enacted Bail Reform Act and that the court in fixing the bond did not act pursuant to the new Bail Reform Act in that it did not follow the provisions of § 3146 providing that consideration be given to release of a defendant on his personal recognizance and to the imposition of minimum conditions necessary to secure defendant's appearance.

There is nothing in the record to indicate that the court was not aware of the provisions of the Bail Reform Act. In any event, the order for release on bail was in conformity with § 3148 which deals with release after conviction. If defendant's release was in fact secured under Rule 46, Fed.R.Crim.P., the result would be the same as the rule is a substantial restatement of 18 U.S.C.A. § 3141. See United States v. Luis, 5 Cir., 418 F.2d 439.

Defendant makes the further contention that he cannot be prosecuted under

§ 3150 because of the provisions of § 3146(c) reading:

"A judicial officer authorizing the release of a person under this section shall issue an appropriate order containing a statement of the conditions imposed, if any, shall inform such person of the penalties applicable to violations of the conditions of his release and shall advise him that a warrant for his arrest will be issued immediately upon any such violation."

It is agreed that the defendant was not advised as to any conditions imposed or penalties applicable to violations of the conditions.

Section 3148 relating to bail after conviction contains provisions materially different from the provisions of § 3146 and hence it is questionable whether § 3146(c) is applicable to release on bail after conviction.

The § 3146(c) reference to conditions, modified by the words "if any", would reasonably appear to refer to special conditions authorized by § 3146(a) such as placing restrictions with respect to travel, association, custody and supervision. The statute fixes no penalty for violation of such conditions. A reasonable basis exists for fully advising a defendant as to precise conditions of the character above described which are imposed and the consequences of violations.

Here no conditions of such type were imposed. Defendant has posted a bond to assure his appearance when required. His obligation is limited to appearance when required and the penalty for his failure to do so is clearly set out in § 3150. Defendant was told by the court that his bond is for the purpose of assuring his appearance when required. Defendant by virtue of his prior criminal experience was certainly aware of the necessity of his appearance in court at all material stages of criminal proceedings against him.

Ramsey Clark, Deputy Attorney General, in a hearing before the Senate Judiciary Committee on the Bail Reform

Act made the following statement with respect to § 3146(c):

> "It also requires the judicial officer to inform each defendant of the penalties applicable to defendant. This is designed not as a prerequisite to subsequent prosecution, but in order to enhance its deterrent value of increased emphasis on criminal penalties * *." See Hearings before the Sub-committee on Constitutional Rights and the Sub-committee on Improvement in Judicial Machinery of the Committee on the Judiciary, United States Senate, 89th Congress, First Session, on S. 1357, S. 646, S. 647 and S. 648, pages 23–24 (1965).

Since this legislation was sponsored by the Department of Justice, the Department's analysis and interpretation of the legislation is entitled to considerable weight in determining congressional intent.

We do not believe that Congress intended in the factual situation here presented that an order stating conditions and a warning as to the penalties for violation would be a condition precedent or an essential element of the offense set out in § 3150. The statute itself clearly sets out the duty to appear as required and the penalty for failure so to do.

### III.

Defendant's contention that the indictment is fatally defective because it fails to allege the forfeiture of bail lacks merit.[1] The present bail jumping statute differs materially from the prior bail jumping statute, 18 U.S.C.A. § 3146, which was repealed by the Bail Reform Act of 1966.[2]

The present statute eliminates the provision of the former statute that a defendant on bail would have thirty days after forfeiture of bail to appear before criminal proceedings could be invoked. The present statute provides that one released from custody who willfully fails to appear as required shall incur a forfeiture of the security given for his release and then goes on to say, "and in addition shall be subject to criminal penalties." The statute by its plain language does not require forfeiture of bail as a condition precedent to criminal prosecution as an essential element of the offense.

### IV.

Defendant asserts the court committed error in instructions given and in refusal to give requested instructions. The basic disputed fact issue is whether defendant's failure to appear for trial is willful. A detailed discussion of the instructions given and requested would unduly prolong this opinion. We have carefully examined the record in this respect and find no prejudicial error. Defendant's principal contention is that the jury should have been instructed that defendant's acts could not be found willful unless defendant had actual notice of the date set for trial. The court in United States v. Hall, 2 Cir., 346 F.2d 875, 881, rejected a similar contention made under the former bail jumping statute, saying:

> "Obviously, the nature of the offense is such that it is hardly likely the bail-jumper will leave his forwarding address. To require the Government under these circumstances to adduce proof of a fugitive's knowledge of a forfeiture declaration would be to attribute to Congress a foolhardy judgment."

The court then held that the evidence was sufficient to establish circumstantially the element of willfulness. See

---

1. While not material, the record shows bail was in fact forfeited by order filed January 27, 1969.

2. Under former 18 U.S.C.A. § 3146, one who incurs a forfeiture of bail and willfully fails to surrender himself within thirty days of the date of forfeiture is subject to the bail jumping penalty. See United States v. Hall, 2 Cir., 346 F.2d 875.

United States v. Bourassa, 10 Cir., 411 F.2d 69, 74.

■ In our present case, the evidence is ample to support a finding that defendant went underground for a substantial period, leaving no forwarding address with court officials or his attorneys; that notice of trial was given to defendant's wife both by the clerk and defendant's attorney; that everything was done that could be done to provide the defendant with notice of the retrial; that defendant when he left knew that his appearance would be required if his conviction was affirmed, or if reversed and remanded for a new trial; and that defendant in fact had actual knowledge of the appellate action prior to the date set for a new trial. Under such a factual setting, the court properly refused to instruct that the defendant's conduct could not be willful unless he had actual notice of the order fixing the date for retrial.

■ Defendant's further contention, that he is entitled to have his theory of the defense submitted, which theory is that his hideout was solely for the purpose of avoiding apprehension on other criminal charges, and that it was not for the purpose of evading appearance for trial in the case here under consideration, lacks merit.

The defendant did not testify. Defendant has failed to establish that the court committed prejudicial error in its instructions.

**V.**

Lastly, defendant urges that he is entitled to a new trial because the court's comments on the evidence exceeded the bounds of fundamental fairness and fair comment.

The court properly defined "willful" and fairly summarized the evidence upon such issue, and then stated:

"And as I told you, under the law I think it would be a fair finding that the government has proved beyond a reasonable doubt that he deliberately left Norborne, Missouri, absented him-

self from there where—the only address the government had for him, and did not return to the Western District of Missouri for further proceedings in this case."

The court told the jury that the issue of whether defendant's acts were willful was a factual issue for the jury to determine and that if this essential element of the offense was not established, the defendant should be acquitted. The court on at least four occasions told the jury that they were the fact finders and that they were not bound by any expression of opinion by the court.

In Franano v. United States, 8 Cir., 310 F.2d 533, 537, we rejected an unfair comment claim, stating:

"There can be no doubt that a federal judge in a criminal case is more than a mere moderator and may assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence and by expressing his opinion upon the facts, provided he clearly states to the jury that all matters of fact are submitted to their determination. Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); Northcraft v. United States, supra, 271 F.2d [184] at 188–189; Myres v. United States, 8 Cir., 174 F.2d 329, 338 (1949), cert. denied, 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520 (1949); Buchanan v. United States, 8 Cir., 15 F.2d 496, 497–498 (1926). However, since a trial judge's influence upon a jury is necessarily of such great magnitude, a trial judge should exercise care and discretion in expressing an opinion so as not to mislead or, in effect, to destroy the jury's right as the sole arbiters of all fact questions. Quercia v. United States, supra, 289 U.S. at 470, 53 S.Ct. at 699; Holmes v. United States, 4 Cir., 271 F. 2d 635, 639 (1959); Stoneking v. United States, 8 Cir., 232 F.2d 385, 389–390 (1956), cert. denied, 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54 (1956); Cook v. United States, 8 Cir., 18 F.2d 50, 52 (1927).

"A survey of cases indicates that reviewing courts are hesitant to reverse a judgment due to an allegedly unfair comment within the charge to the jury unless the trial judge clearly became argumentative and assumed the role of an advocate."

To like effect, see Rowell v. United States, 8 Cir., 368 F.2d 957, 960; Fowler v. United States, 8 Cir., 352 F.2d 100, 109.

█ We are satisfied that the court did not go beyond the bounds of propriety in its instructions when they are judged by the standards just set out. The court did not become an advocate. The remarks were fair, dispassionate and judicial. The jury was adequately advised that the fact findings were solely entrusted to them and that the opinions expressed by the court were not binding upon them.

Moreover, the case against the defendant is a strong one. We do not believe the remarks complained of could have had a prejudicial effect. See Franano v. United States, 8 Cir., 310 F.2d 533, 538–539. It is difficult to see how the jury upon the facts before it could have reached a different result.

The judgment is affirmed.

NEVILLE, District Judge (concurring specially).

I concur in the affirmance of defendant's conviction, though I do so reluctantly as to point V in the majority opinion. Were this a case of first impression and had this court not rendered several rather clear prior decisions, I would vote to reverse. I cannot escape the conclusion that the trial judge in effect and for all practical purposes directed a verdict of guilty for the government against defendant when he said:

"I have my own opinion what that evidence shows, and I don't mind telling you, as what I say is not binding on you in any way. I think the evidence shows far beyond a reasonable doubt this defendant did make himself unavailable to notice * * *. And as I told you, under the law I think it would be a fair finding that the government has proved beyond a reasonable doubt that he deliberately left Norborne, Missouri, absented himself from there * * *."

I recognize that the trial judge told the jury on more than one occasion that "Any such comments are only an expression of the judge's opinion as to the facts and the jury may disregard them entirely"; "What I say is not binding on you in any way"; and "My opinion * * makes no difference whatsoever in the case". As I read the three prior Eighth Circuit cases cited in the majority opinion which rely on Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1327 (1933), and other United States Supreme Court cases, the use of the above language by the trial court prevents a reversal. In my opinion the trial court nevertheless led, or may well have led the jury to its conclusion of conviction despite the use of such cautionary instructions.

Weight is given in the majority opinion to the fact that the evidence demonstrates clear guilt. I agree. The record demonstrates a strong case for guilt. The same verdict of guilty undoubtedly would have been returned had the trial judge not made the comments and expression of opinion he did. Nevertheless I am persuaded by the reasoning in Judge Lay's dissenting opinion in Rogers v. United States, 367 F.2d 998, 1003 (8th Cir. 1966). Every trial lawyer recognizes the importance of the trial judge's comments to the jury. The judge is revered by many jurors, and they hang on his every word. Commenting as this trial court did, and as many before him apparently have done, seems to me at the least to be every bad practice. The fact that the evidence of defendant's guilt is substantial does not equate with granting him a fair trial.

Though I accord with the reasoning in Judge Lay's dissenting opinion aforesaid, I recognize as a trial judge (sitting by special appointment with the Court of Appeals), that a dissent may be

but a voice in the wilderness and that were I sitting on this case at the trial level, certainly I would be bound by and would be required to follow the several prior determinations of this court. Therefore, though with such reservations, I concur in the affirmance.