Justice ALITO, dissenting.
The Court is tired of the Armed Career Criminal Act of 1984 (ACCA) and in particular its residual clause. Anxious to rid our docket of bothersome residual clause cases, the Court is willing to do what it takes to get the job done. So brushing aside stare decisis, the Court holds that the residual clause is unconstitutionally vague even though we have twice rejected that very argument within the last eight years. The canons of interpretation get no greater respect. Inverting the canon that *2574 a statute should be construed if possible to avoid unconstitutionality, the Court rejects a reasonable construction of the residual clause that would avoid any vagueness problems, preferring an alternative that the Court finds to be unconstitutionally vague. And the Court is not stopped by the well-established rule that a statute is void for vagueness only if it is vague in all its applications. While conceding that some applications of the residual clause are straightforward, the Court holds that the clause is now void in its entirety. The Court's determination to be done with residual clause cases, if not its fidelity to legal principles, is impressive.
I
A
Petitioner Samuel Johnson (unlike his famous namesake) has led a life of crime and violence. His presentence investigation report sets out a résumé of petty and serious crimes, beginning when he was 12 years old. Johnson's adult record includes convictions for, among other things, robbery, attempted robbery, illegal possession of a sawed-off shotgun, and a drug offense.
In 2010, the Federal Bureau of Investigation (FBI) began monitoring Johnson because of his involvement with the National Socialist Movement, a white-supremacist organization suspected of plotting acts of terrorism. In June of that year, Johnson left the group and formed his own radical organization, the Aryan Liberation Movement, which he planned to finance by counterfeiting United States currency. In the course of the Government's investigation, Johnson "disclosed to undercover FBI agents that he manufactured napalm, silencers, and other explosives for" his new organization. 526 Fed.Appx. 708, 709 (C.A.8 2013)(per curiam). He also showed the agents an AK-47 rifle, a semiautomatic rifle, a semiautomatic pistol, and a cache of approximately 1,100 rounds of ammunition. Later, Johnson told an undercover agent: "You know I'd love to assassinate some ... hoodrats as much as the next guy, but I think we really got to stick with high priority targets." Revised Presentence Investigation Report (PSR) ¶ 15. Among the top targets that he mentioned were "the Mexican consulate," "progressive bookstores," and individuals he viewed as "liberals." PSR ¶ 16.
In April 2012, Johnson was arrested, and he was subsequently indicted on four counts of possession of a firearm by a felon and two counts of possession of ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)and § 924(e). He pleaded guilty to one of the firearms counts, and the District Court sentenced him to the statutory minimum of 15 years' imprisonment under ACCA, based on his prior felony convictions for robbery, attempted robbery, and illegal possession of a sawed-off shotgun.
B
ACCA provides a mandatory minimum sentence for certain violations of § 922(g), which prohibits the shipment, transportation, or possession of firearms or ammunition by convicted felons, persons previously committed to a mental institution, and certain others. Federal law normally provides a maximum sentence of 10 years' imprisonment for such crimes. See § 924(a)(2). Under ACCA, however, if a defendant convicted under § 922(g)has three prior convictions "for a violent felony or a serious drug offense," the sentencing court must impose a sentence of at least 15 years' imprisonment. § 924(e)(1).
ACCA's definition of a "violent felony" has three parts. First, a felony qualifies if it "has as an element the use, attempted use, or threatened use of physical force *2575 against the person of another." § 924(e)(2)(B)(i). Second, the Act specifically names four categories of qualifying felonies: burglary, arson, extortion, and offenses involving the use of explosives. See § 924(e)(2)(B)(ii). Third, the Act contains what we have called a "residual clause," which reaches any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Ibid.
The present case concerns the residual clause. The sole question raised in Johnson's certiorari petition was whether possession of a sawed-off shotgun under Minnesota law qualifies as a violent felony under that clause. Although Johnson argued in the lower courts that the residual clause is unconstitutionally vague, he did not renew that argument here. Nevertheless, after oral argument, the Court raised the question of vagueness on its own. The Court now holds that the residual clause is unconstitutionally vague in all its applications. I cannot agree.
II
I begin with stare decisis. Eight years ago in James v. United States,550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), Justice SCALIA, the author of today's opinion for the Court, fired an opening shot at the residual clause. In dissent, he suggested that the residual clause is void for vagueness. Id., at 230, 127 S.Ct. 1586. The Court held otherwise, explaining that the standard in the residual clause "is not so indefinite as to prevent an ordinary person from understanding" its scope. Id., at 210, n. 6, 127 S.Ct. 1586.
Four years later, in Sykes v. United States,564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), Justice SCALIA fired another round. Dissenting once again, he argued that the residual clause is void for vagueness and rehearsed the same basic arguments that the Court now adopts. See id.,at ---- - ----, 131 S.Ct., at 2273-2274; see also Derby v. United States,564 U.S. ----, ---- - ----, 131 S.Ct. 2858, 2859-2860, 180 L.Ed.2d 904 (2011)(SCALIA, J., dissenting from denial of certiorari). As in James,the Court rejected his arguments. See Sykes,564 U.S., at ----, 131 S.Ct., at 2276-2277. In fact, Justice SCALIA was the onlyMember of the SykesCourt who took the position that the residual clause could not be intelligibly applied to the offense at issue. The opinion of the Court, which five Justices joined, expressly held that the residual clause "states an intelligible principle and provides guidance that allows a person to 'conform his or her conduct to the law.' " Id.,at ---- - ----, 131 S.Ct., at 2277(quoting Chicago v. Morales,527 U.S. 41, 58, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)(plurality opinion)). Justice THOMAS's concurrence, while disagreeing in part with the Court's interpretation of the residual clause, did not question its constitutionality. See Sykes,564 U.S., at ----, 131 S.Ct., at ---- (opinion concurring in judgment). And Justice KAGAN's dissent, which Justice GINSBURG joined, argued that a proper application of the provision required a different result. See id.,at ----, 131 S.Ct., at ----. Thus, eight Members of the Court found the statute capable of principled application.
It is, of course, true that "[s]tare decisisis not an inexorable command." Payne v. Tennessee,501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). But neither is it an empty Latin phrase. There must be good reasons for overruling a precedent, and there is none here. Nothing has changed since our decisions in Jamesand Sykes-nothing, that is, except the Court's weariness with ACCA cases.
Reprising an argument that Justice SCALIA made to no avail in *2576 Sykes, supra,at ----, 131 S.Ct., at 2287(dissenting opinion), the Court reasons that the residual clause must be unconstitutionally vague because we have had trouble settling on an interpretation. See ante,at 2558 - 2559. But disagreement about the meaning and application of the clause is not new. We were divided in Jamesand in Sykesand in our intervening decisions in Begay v. United States,553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), and Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009). And that pattern is not unique to ACCA; we have been unable to come to an agreement on many recurring legal questions. The Confrontation Clause is one example that comes readily to mind. See, e.g., Williams v. Illinois,567 U.S. ----, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012); Bullcoming v. New Mexico,564 U.S. ----, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011); Melendez-Diaz v. Massachusetts,557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). Our disagreements about the meaning of that provision do not prove that the Confrontation Clause has no ascertainable meaning. Likewise, our disagreements on the residual clause do not prove that it is unconstitutionally vague.
The Court also points to conflicts in the decisions of the lower courts as proof that the statute is unconstitutional. See ante, at 2559 - 2560. The Court overstates the degree of disagreement below. For many crimes, there is no dispute that the residual clause applies. And our certiorari docket provides a skewed picture because the decisions that we are asked to review are usually those involving issues on which there is at least an arguable circuit conflict. But in any event, it has never been thought that conflicting interpretations of a statute justify judicial elimination of the statute. One of our chief responsibilities is to resolve those disagreements, see Supreme Court Rule 10, not to strike down the laws that create this work.
The Court may not relish the task of resolving residual clause questions on which the Circuits disagree, but the provision has not placed a crushing burden on our docket. In the eight years since James,we have decided all of three cases involving the residual clause. See Begay, supra; Chambers, supra; Sykes, supra. Nevertheless, faced with the unappealing prospect of resolving more circuit splits on various residual clause issues, see ante, at 2559, six Members of the Court have thrown in the towel. That is not responsible.
III
Even if we put stare decisisaside, the Court's decision remains indefensible. The residual clause is not unconstitutionally vague.
A
The Fifth Amendment prohibits the enforcement of vague criminal laws, but the threshold for declaring a law void for vagueness is high. "The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." United States v. National Dairy Products Corp.,372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). Rather, it is sufficient if a statute sets out an "ascertainable standard." United States v. L. Cohen Grocery Co.,255 U.S. 81, 89, 41 S.Ct. 298, 65 L.Ed. 516 (1921). A statute is thus void for vagueness only if it wholly "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."
*2577 United States v. Williams,553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).
The bar is even higher for sentencing provisions. The fair notice concerns that inform our vagueness doctrine are aimed at ensuring that a " 'person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly.' " Hoffman Estates v. Flipside, Hoffman Estates, Inc.,455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)(quoting Grayned v. City of Rockford,408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). The fear is that vague laws will " 'trap the innocent.' " 455 U.S., at 498, 102 S.Ct. 1186. These concerns have less force when it comes to sentencing provisions, which come into play only after the defendant has been found guilty of the crime in question. Due process does not require, as Johnson oddly suggests, that a "prospective criminal" be able to calculate the precise penalty that a conviction would bring. Supp. Brief for Petitioner 5; see Chapman v. United States,500 U.S. 453, 467-468, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991)(concluding that a vagueness challenge was "particularly" weak "since whatever debate there is would center around the appropriate sentence and not the criminality of the conduct").
B
ACCA's residual clause unquestionably provides an ascertainable standard. It defines "violent felony" to include any offense that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). That language is by no means incomprehensible. Nor is it unusual. There are scores of federal and state laws that employ similar standards. The Solicitor General's brief contains a 99-page appendix setting out some of these laws. See App. to Supp. Brief for United States; see also James, supra,at 210, n. 6, 127 S.Ct. 1586. If all these laws are unconstitutionally vague, today's decision is not a blast from a sawed-off shotgun; it is a nuclear explosion.
Attempting to avoid such devastation, the Court distinguishes these laws primarily on the ground that almost all of them "require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion." Ante,at 2561 (emphasis in original). The Court thus admits that, "[a]s a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct." Ibid.Its complaint is that the residual clause "requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime." Ibid. (emphasis added). Thus, according to the Court, ACCA's residual clause is unconstitutionally vague because its standard must be applied to "an idealized ordinary case of the crime" and not, like the vast majority of the laws in the Solicitor General's appendix, to "real-world conduct."
ACCA, however, makes no reference to "an idealized ordinary case of the crime." That requirement was the handiwork of this Court in Taylor v. United States,495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). And as I will show, the residual clause can reasonably be interpreted to refer to "real-world conduct."[1]
*2578 C
When a statute's constitutionality is in doubt, we have an obligation to interpret the law, if possible, to avoid the constitutional problem. See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council,485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). As one treatise puts it, "[a] statute should be interpreted in a way that avoids placing its constitutionality in doubt." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts § 38, p. 247 (2012). This canon applies fully when considering vagueness challenges. In cases like this one, "our task is not to destroy the Act if we can, but to construe it, if consistent with the will of Congress, so as to comport with constitutional limitations." Civil Service Comm'n v. Letter Carriers, 413 U.S. 548, 571, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); see also Skilling v. United States,561 U.S. 358, 403, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). Indeed, " '[t]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' " Id.,at 406, 130 S.Ct. 2896(quoting Hooper v. California,155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895); emphasis deleted); see also Ex parte Randolph,20 F.Cas. 242, 254 (No. 11,558) (C.C.Va.1833) (Marshall, C.J.).
The Court all but concedes that the residual clause would be constitutional if it applied to "real-world conduct." Whether that is the bestinterpretation of the residual clause is beside the point. What matters is whether it is a reasonable interpretation of the statute. And it surely is that.
First, this interpretation heeds the pointed distinction that ACCA draws between the "element[s]" of an offense and "conduct." Under § 924(e)(2)(B)(i), a crime qualifies as a "violent felony" if one of its "element [s]" involves "the use, attempted use, or threatened use of physical force against the person of another." But the residual clause, which appears in the very next subsection, § 924(e)(2)(B)(ii), focuses on "conduct"-specifically, "conduct that presents a serious potential risk of physical injury to another." The use of these two different terms in § 924(e)indicates that "conduct" refers to things done during the commission of an offense that are not part of the elements needed for conviction. Because those extra actions vary from case to case, it is natural to interpret "conduct" to mean real-world conduct, not the conduct involved in some Platonic ideal of the offense.
Second, as the Court points out, standards like the one in the residual clause almost always appear in laws that call for application by a trier of fact. This strongly suggests that the residual clause calls for the same sort of application.
Third, if the Court is correct that the residual clause is nearly incomprehensible when interpreted as applying to an "idealized ordinary case of the crime," then that is telling evidence that this is not what Congress intended. When another interpretation is ready at hand, why should we assume that Congress gave the clause a meaning that is impossible-or even, exceedingly difficult-to apply?
D
Not only does the "real-world conduct" interpretation fit the terms of the residual *2579 clause, but the reasons that persuaded the Court to adopt the categorical approach in Tayloreither do not apply or have much less force in residual clause cases.
In Taylor,the question before the Court concerned the meaning of "burglary," one of ACCA's enumerated offenses. The Court gave three reasons for holding that a judge making an ACCA determination should generally look only at the elements of the offense of conviction and not to other things that the defendant did during the commission of the offense. First, the Court thought that ACCA's use of the term "convictions" pointed to the categorical approach. The Court wrote: "Section 924(e)(1)refers to 'a person who ... has three previous convictions' for-not a person who has committed-three previous violent felonies or drug offenses." 495 U.S., at 600, 110 S.Ct. 2143. Second, the Court relied on legislative history, noting that ACCA had previously contained a generic definition of burglary and that "the deletion of [this] definition ... may have been an inadvertent casualty of a complex drafting process." Id.,at 589-590, 601, 110 S.Ct. 2143. Third, the Court felt that "the practical difficulties and potential unfairness of a factual approach [were] daunting." Id., at 601, 110 S.Ct. 2143.
None of these three grounds dictates that the categorical approach must be used in residual clause cases. The second ground, which concerned the deletion of a generic definition of burglary, obviously has no application to the residual clause. And the first ground has much less force in residual clause cases. In Taylor,the Court reasoned that a defendant has a "conviction" for burglary only if burglary is the offense set out in the judgment of conviction. For instance, if a defendant commits a burglary but pleads guilty, under a plea bargain, to possession of burglar's tools, the TaylorCourt thought that it would be unnatural to say that the defendant had a convictionfor burglary. Now consider a case in which a gang member is convicted of illegal possession of a sawed-off shotgun and the evidence shows that he concealed the weapon under his coat, while searching for a rival gang member who had just killed his brother. In that situation, it is not at all unnatural to say that the defendant had a conviction for a crime that "involve[d] conductthat present[ed] a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii)(emphasis added). At the very least, it would be a reasonable way to describe the defendant's conviction.
The TaylorCourt's remaining reasons for adopting the categorical approach cannot justify an interpretation that renders the residual clause unconstitutional. While the TaylorCourt feared that a conduct-specific approach would unduly burden the courts, experience has shown that application of the categorical approach has not always been easy. Indeed, the Court's main argument for overturning the statute is that this approach is unmanageable in residual clause cases.
As for the notion that the categorical approach is more forgiving to defendants, there is a strong argument that the opposite is true, at least with respect to the residual clause. Consider two criminal laws: Injury occurs in 10% of cases involving the violation of statute A, but in 90% of cases involving the violation of statute B. Under the categorical approach, a truly dangerous crime under statute A might not qualify as a violent felony, while a crime with no measurable risk of harm under statute B would count against the defendant. Under a conduct-specific inquiry, on the other hand, a defendant's actual conduct would determine whether ACCA's mandatory penalty applies.
*2580 It is also significant that the allocation of the burden of proof protects defendants. The prosecution bears the burden of proving that a defendant has convictions that qualify for sentencing under ACCA. If evidentiary deficiencies, poor recordkeeping, or anything else prevents the prosecution from discharging that burden under the conduct-specific approach, a defendant would not receive an ACCA sentence.
Nor would a conduct-specific inquiry raise constitutional problems of its own. It is questionable whether the Sixth Amendment creates a right to a jury trial in this situation. See Almendarez-Torres v. United States,523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). But if it does, the issue could be tried to a jury, and the prosecution could bear the burden of proving beyond a reasonable doubt that a defendant's prior crimes involved conduct that presented a serious potential risk of injury to another. I would adopt this alternative interpretation and hold that the residual clause requires an examination of real-world conduct.
The Court's only reason for refusing to consider this interpretation is that "the Government has not asked us to abandon the categorical approach in residual-clause cases." Ante,at 2562. But the Court cites no case in which we have suggested that a saving interpretation may be adopted only if it is proposed by one of the parties. Nor does the Court cite any secondary authorities advocating this rule. Cf. Scalia, Reading Law § 38 (stating the canon with no such limitation). On the contrary, we have long recognized that it is "our plain duty to adopt that construction which will save [a] statute from constitutional infirmity," where fairly possible. United States ex rel. Attorney General v. Delaware & Hudson Co.,213 U.S. 366, 407, 29 S.Ct. 527, 53 L.Ed. 836 (1909). It would be strange if we could fulfill that "plain duty" only when a party asks us to do so. And the Court's refusal to consider a saving interpretation not advocated by the Government is hard to square with the Court's adoption of an argument that petitioner chose not to raise. As noted, Johnson did not ask us to hold that the residual clause is unconstitutionally vague, but the Court interjected that issue into the case, requested supplemental briefing on the question, and heard reargument. The Court's refusal to look beyond the arguments of the parties apparently applies only to arguments that the Court does not want to hear.
E
Even if the categorical approach is used in residual clause cases, however, the clause is still not void for vagueness. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined" on an as-applied basis. United States v. Mazurie,419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." Maynard v. Cartwright,486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Thus, in a due process vagueness case, we will hold that a law is facially invalid "only if the enactment is impermissibly vague in allof its applications." Hoffman Estates,455 U.S., at 494-495, 102 S.Ct. 1186(emphasis added); see also Chapman,500 U.S., at 467, 111 S.Ct. 1919.[2]
In concluding that the residual clause is facially void for vagueness, the Court flatly *2581 contravenes this rule. The Court admits "that there will be straightforward cases under the residual clause." Ante,at 2560. But rather than exercising the restraint that our vagueness cases prescribe, the Court holds that the residual clause is unconstitutionally vague even when its application is clear.
The Court's treatment of this issue is startling. Its facial invalidation precludes a sentencing court that is applying ACCA from counting convictions for even those specific offenses that this Court previously found to fall within the residual clause. See James,550 U.S., at 203-209, 127 S.Ct. 1586(attempted burglary); Sykes,564 U.S., at ---- - ----, 131 S.Ct., at 2272-2275(flight from law enforcement in a vehicle). Still worse, the Court holds that vagueness bars the use of the residual clause in other cases in which its applicability can hardly be questioned. Attempted rape is an example. See, e.g.,Dawson v. United States,702 F.3d 347, 351-352 (C.A.6 2012). Can there be any doubt that "an idealized ordinary case of th[is] crime" "involves conduct that presents a serious potential risk of physical injury to another"? How about attempted arson,[3]attempted kidnapping,[4]solicitation to commit aggravated assault,[5]possession of a loaded weapon with the intent to use it unlawfully against another person,[6]possession of a weapon in prison,[7]or compelling a person to act as a prostitute?[8]Is there much doubt that those offenses "involve conduct that presents a serious potential risk of physical injury to another"?
Transforming vagueness doctrine, the Court claims that we have never actually held that a statute may be voided for vagueness only when it is vague in all its applications. But that is simply wrong. In Hoffman Estates,we reversed a Seventh Circuit decision that voided an ordinance prohibiting the sale of certain items. See 455 U.S., at 491, 102 S.Ct. 1186. The Seventh Circuit struck down the ordinance because it was "unclear in someof its applications," but we reversed and emphasized that a law is void for vagueness "only if [it] is impermissibly vague in all of its applications." Id.,at 494-495, 102 S.Ct. 1186; see also id.,at 495, n. 7, 102 S.Ct. 1186(collecting cases). Applying that principle, we held that the "facial challenge [wa]s unavailing" because "at least some of the items sold ... [we]re covered" by the *2582 ordinance. Id.,at 500, 102 S.Ct. 1186. These statements were not dicta. They were the holding of the case. Yet the Court does not even mention this binding precedent.
Instead, the Court says that the facts of two earliercases support a broader application of the vagueness doctrine. See ante, at 2560 - 2561. That, too, is incorrect. Neither case remotely suggested that mere overbreadth is enough for facial invalidation under the Fifth Amendment.
In Coates v. Cincinnati,402 U.S. 611, 612, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), we addressed an ordinance that restricted free assembly and association rights by prohibiting "annoying" conduct. Our analysis turned in large part on those First Amendment concerns. In fact, we specifically explained that the "vice of the ordinance lies not alone in its violation of the due process standard of vagueness." Id.,at 615, 91 S.Ct. 1686. In the present case, by contrast, no First Amendment rights are at issue. Thus, Coatescannot support the Court's rejection of our repeated statements that "vagueness challenges to statutes which do not involve First Amendment freedomsmust be examined in light of the facts ... at hand." Mazurie, supra,at 550, 95 S.Ct. 710(emphasis added).
Likewise, L. Cohen Grocery Co.,255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, proves precisely the opposite of what the Court claims. In that case, we struck down a statute prohibiting " 'unjust or unreasonable rate[s]' " because it provided no "ascertainable standard of guilt" and left open "the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against." Id.,at 89, 41 S.Ct. 298. The clear import of this language is that the law at issue was impermissibly vague in all applications. And in the years since, we have never adopted the majority's contradictory interpretation. On the contrary, we have characterized the case as involving a statute that could "not constitutionally be applied to any set of facts." United States v. Powell,423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). Thus, our holdings and our dicta prohibit the Court's expansion of the vagueness doctrine. The Constitution does not allow us to hold a statute void for vagueness unless it is vague in all its applications.
IV
Because I would not strike down ACCA's residual clause, it is necessary for me to address whether Johnson's conviction for possessing a sawed-off shotgun qualifies as a violent felony. Under either the categorical approach or a conduct-specific inquiry, it does.
A
The categorical approach requires us to determine whether "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." James,550 U.S., at 208, 127 S.Ct. 1586. This is an "inherently probabilistic" determination that considers the circumstances and conduct that ordinarily attend the offense. Id.,at 207, 127 S.Ct. 1586. The mere fact that a crime couldbe committed without a risk of physical harm does not exclude it from the statute's reach. See id.,at 207-208, 127 S.Ct. 1586. Instead, the residual clause speaks of "potential risk[s]," § 924(e)(2)(B)(ii), a term suggesting "that Congress intended to encompass possibilities even more contingent or remote than a simple 'risk,' much less a certainty." James, supra, at 207-208, 127 S.Ct. 1586.
Under these principles, unlawful possession of a sawed-off shotgun qualifies as a violent felony. As we recognized in District of Columbia v. Heller,554 U.S. 570, 625, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), sawed-off shotguns are "not typically possessed by law-abiding citizens for *2583 lawful purposes." Instead, they are uniquely attractive to violent criminals. Much easier to conceal than long-barreled shotguns used for hunting and other lawful purposes, short-barreled shotguns can be hidden under a coat, tucked into a bag, or stowed under a car seat. And like a handgun, they can be fired with one hand-except to more lethal effect. These weapons thus combine the deadly characteristics of conventional shotguns with the more convenient handling of handguns. Unlike those common firearms, however, they are not typically possessed for lawful purposes. And when a person illegally possesses a sawed-off shotgun during the commission of a crime, the risk of violence is seriously increased. The ordinary case of unlawful possession of a sawed-off shotgun therefore "presents a serious potential risk of physical injury to another." § 922(e)(2)(B)(ii).
Congress' treatment of sawed-off shotguns confirms this judgment. As the Government's initial brief colorfully recounts, sawed-off shotguns were a weapon of choice for gangsters and bank robbers during the Prohibition Era. See Brief for United States 4.[9]In response, Congress enacted the National Firearms Act of 1934, which required individuals possessing certain especially dangerous weapons-including sawed-off shotguns-to register with the Federal Government and pay a special tax. 26 U.S.C. §§ 5845(a)(1)-(2). The Act was passed on the understanding that "while there is justification for permitting the citizen to keep a pistol or revolver for his own protection without any restriction, there is no reason why anyone except a law officer should have a ... sawed-off shotgun." H.R.Rep. No. 1780, 73d Cong., 2d Sess., 1 (1934). As amended, the Act imposes strict registration requirements for any individual wishing to possess a covered shotgun, see, e.g.,§§ 5822, 5841(b), and illegal possession of such a weapon is punishable by imprisonment for up to 10 years. See §§ 5861(b)-(d), 5871. It is telling that this penalty exceeds that prescribed by federal law for quintessential violent felonies.[10]It thus seems perfectly clear that Congress has long regarded the illegal possession of a sawed-off shotgun as a crime that poses a serious risk of harm to others.
The majority of States agree. The Government informs the Court, and Johnson does not dispute, that 28 States have followed Congress' lead by making it a crime to possess an unregistered sawed-off shotgun, and 11 other States and the District of Columbia prohibit private possession of sawed-off shotguns entirely. See Brief for United States 8-9 (collecting statutes). Minnesota, where petitioner was convicted, *2584 has adopted a blanket ban, based on its judgment that "[t]he sawed-off shotgun has no legitimate use in the society whatsoever." State v. Ellenberger,543 N.W.2d 673, 676 (Minn.App.1996)(internal quotation marks and citation omitted). Possession of a sawed-off shotgun in Minnesota is thus an inherently criminal act. It is fanciful to assume that a person who chooses to break the law and risk the heavy criminal penalty incurred by possessing a notoriously dangerous weapon is unlikely to use that weapon in violent ways.
B
If we were to abandon the categorical approach, the facts of Johnson's offense would satisfy the residual clause as well. According to the record in this case, Johnson possessed his sawed-off shotgun while dealing drugs. When police responded to reports of drug activity in a parking lot, they were told by two people that "Johnson and another individual had approached them and offered to sell drugs." PSR ¶ 45. The police then searched the vehicle where Johnson was seated as a passenger, and they found a sawed-off shotgun and five bags of marijuana. Johnson admitted that the gun was his.
Understood in this context, Johnson's conduct posed an acute risk of physical injury to another. Drugs and guns are never a safe combination. If one of his drug deals had gone bad or if a rival dealer had arrived on the scene, Johnson's deadly weapon was close at hand. The sawed-off nature of the gun elevated the risk of collateral damage beyond any intended targets. And the location of the crime-a public parking lot-significantly increased the chance that innocent bystanders might be caught up in the carnage. This is not a case of "mere possession" as Johnson suggests. Brief for Petitioner i. He was not storing the gun in a safe, nor was it a family heirloom or collector's item. He illegally possessed the weapon in case he needed to use it during another crime. A judge or jury could thus conclude that Johnson's offense qualified as a violent felony.
There should be no doubt that Samuel Johnson was an armed career criminal. His record includes a number of serious felonies. And he has been caught with dangerous weapons on numerous occasions. That this case has led to the residual clause's demise is confounding. I only hope that Congress can take the Court at its word that either amending the list of enumerated offenses or abandoning the categorical approach would solve the problem that the Court perceives.

The Court also says that the residual clause's reference to the enumerated offenses is "confusing." Ante, at 2561. But this is another argument we rejected in James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), and Sykes v. United States, 564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011), and it is no more persuasive now. Although the risk level varies among the enumerated offenses, all four categories of offenses involve conduct that presents a serious potential risk of harm to others. If the Court's concern is that some of the enumerated offenses do not seem especially risky, all that means is that the statute "sets a low baseline level for risk." Id.,at ----, 131 S.Ct., at 2278(THOMAS, J., concurring in judgment).

This rule is simply an application of the broader rule that, except in First Amendment cases, we will hold that a statute is facially unconstitutional only if "no set of circumstances exists under which the Act would be valid." United States v. Salerno,481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). A void-for-vagueness challenge is a facial challenge. See Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-495, and nn. 5, 6, 7, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Chicago v. Morales,527 U.S. 41, 79, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)(SCALIA, J., dissenting). Consequently, there is no reason why the no-set-of-circumstances rule should not apply in this context. I assume that the Court does not mean to abrogate the no-set-of-circumstances rule in its entirety, but the Court provides no justification for its refusal to apply that rule here. Perhaps the Court has concluded, for some undisclosed reason, that void-for-vagueness claims are different from all other facial challenges not based on the First Amendment. Or perhaps the Court has simply created an ACCA exception.

United States v. Rainey,362 F.3d 733, 735-736 (C.A.11)(per curiam), cert. denied, 541 U.S. 1081, 124 S.Ct. 2433, 158 L.Ed.2d 996 (2004).

United States v. Kaplansky,42 F.3d 320, 323-324 (C.A.6 1994)(en banc).

United States v. Benton,639 F.3d 723, 731-732 (C.A.6), cert. denied, 565 U.S. ----, 132 S.Ct. 599, 181 L.Ed.2d 439 (2011).

United States v. Lynch,518 F.3d 164, 172-173 (C.A.2 2008), cert. denied, 555 U.S. 1177, 129 S.Ct. 1316, 173 L.Ed.2d 595 (2009).

United States v. Boyce,633 F.3d 708, 711-712 (C.A.8 2011), cert. denied, 565 U.S. ----, 132 S.Ct. 1002, 181 L.Ed.2d 744 (2012).

United States v. Brown,273 F.3d 747, 749-751 (C.A.7 2001).

Al Capone's south-side Chicago henchmen used sawed-off shotguns when they executed their rivals from Bugs Moran's north-side gang during the infamous Saint Valentine's Day Massacre of 1929. See 7 Chicago Gangsters Slain by Firing Squad of Rivals, Some in Police Uniforms, N.Y. Times, Feb. 15, 1929, p. A1. Wild Bill Rooney was gunned down in Chicago by a "sawed-off shotgun [that] was pointed through a rear window" of a passing automobile. Union Boss Slain by Gang in Chicago, N.Y. Times, Mar. 20, 1931, p. 52. And when the infamous outlaws Bonnie and Clyde were killed by the police in 1934, Clyde was found "clutching a sawed-off shotgun in one hand." Barrow and Woman are Slain by Police in Louisiana Trap, N.Y. Times, May 24, 1934, p. A1.

See, e.g.,18 U.S.C. § 111(a)(physical assault on federal officer punishable by not more than eight years' imprisonment); § 113(a)(7) (assault within maritime or territorial jurisdiction resulting in substantial bodily injury to an individual under the age of 16 punishable by up to five years' imprisonment); § 117(a) ("assault, sexual abuse, or serious violent felony against a spouse or intimate partner" by a habitual offender within maritime or territorial jurisdiction punishable by up to five years' imprisonment, except in cases of "substantial bodily injury").